### THE STATE v. C. C. CHRISTMAS.

*Indictment—Entering House with Felonious Intent—Evidence—.*
*Larceny.*

1. An indictment for entering a house with an intent to commit a felony or other infamous crime—*The Code,* § 996—is not defective because it charges an intent to commit more than one offence.

2. Where the testimony tended to show that money was missing from a drawer of a bureau in a bed chamber ; that the drawer was usually locked, but frequently was not thus secured ; that the domestic servants of the family had access to the chamber ; that the defendant was a journeyman carpenter, and had often been employed upon jobs about the house and was familiar with its construction,

and knew where money was kept; that on one occasion, when not employed at work, he was discovered in an unoccupied chamber, behind the door and a box in such a position that he could observe the door of the room in which the money was deposited; that upon being discovered, he said he had come to get a balance due for work; that there was nothing so due him, and that there was found on his person a key which would unlock the drawer in which the money was deposited: *Held*, that while none of these circumstances, standing alone, were sufficient evidence of the defendant's guilt, yet, when taken together and as a whole, they did constitute evidence which was properly submitted to the jury upon the question of the intent with which defendant entered the house.

INDICTMENT, tried before *Avery, J.*, at September Term, 1888, of the Superior Court of WAKE County.

The indictment charged the defendant with feloniously entering the dwelling house of T. B. Lyman, in the day time, with intent to steal "the goods, chattels and money of him, the said T. B. Lyman, and also the goods, chattels and money of Anna M. Lyman, in the said dwelling house then and there being," &c.

The following is a summary statement of so much of the case on appeal as is necessary to a proper consideration of the exceptions to the ruling of the Court below:

Miss Lancashire, a witness for the State, testified, among other things, that she lived at the house of Bishop T. B. Lyman; was there on the 28th of July last, and on that day "found the defendant standing behind the door in an unoccupied bed room; * * * his head was turned towards the crack of the door; he was behind a box."

The defendant is a carpenter, and has worked in almost every room in the house, and had worked there some part of every month since August, 1887. The room in which he was, was on the second floor. Mrs. Lyman's room was ten or fifteen feet from where he was, and its position was well known to the defendant. The witness went to Col. Andrews'

STATE *v.* CHRISTMAS.

and called for a policeman. On her return she told defend-
ant that he could not go; that some money was missing.
He said that there was twenty-five cents due him, and he
had come to collect it, and see if there was any more work
for him. The testimony of the witness tended further to
show that the defendant had been up stairs before; that Mrs.
Lyman kept her money in a bureau drawer in her bed room.
About a fortnight before, she had found the defendant up
stairs at the head of the steps near the door.

Upon cross-examination the witness said that it was some
hours after day-light; that the door of the unoccupied room
was wide open; that the defendant used to go up stairs con-
stantly; that Mrs. Lyman generally paid him for his work;
sometimes witness paid him; he was paid by Mrs. Lyman
once on the landing near her bed room door. Witness had
seen him inside Mrs. Lyman's room door for the purpose of
getting pay for his work. The witness testified that servants
had access to the rooms, and upon re-direct examination she
said the defendant had been paid off and discharged.

Mrs. Lyman was introduced as a witness, and the Solicitor
proposed to prove by her " that about the time the defend-
ant had been employed as a carpenter and had had access
to the upper rooms of her house, money was missing from
the drawer in her bed room up stairs, with a view of having
this testimony connected with further facts hereafter to be
shown by the witness, that the key to the upper drawer of
the bureau standing in the passage up stairs was missing
about the same time, and the fact to be proved by another
witness that a key was found on the person of the defendant
when arrested that unlocked the drawer in her room in
which she kept her money." This evidence was objected to
by the defendant, objection overruled, and defendant
excepted.

The witness then testified to having missed money; had
missed it twice before; to having paid the defendant money,

and that there was a key to the bureau in the passage, which was missed, and that she found that the key to her bureau drawer unlocked the drawers of the bureau in the passage, and that the policeman "pulled out a key when he arrested the defendant" that unlocked her drawer and looked like the lost key of the passage bureau. That she did not owe the defendant twenty-five cents, and that the money lost was her separate property. The witness was cross-examined in regard to missing money, and testified that servants were in her room every day to clean up, dust, &c., and that she frequently went out and left them in the room and that she kept money in her bureau drawer and frequently left it unlocked.

J. D. Thompson, a witness for the State, testified that he arrested the defendant, and on searching found a bunch of keys, one of which unlocked the upper drawer of the bureau in Mrs. Lyman's room. The key also unlocked the drawers of bureau in defendant's house, as he had ascertained upon trial, at defendant's request.

"After the testimony for the State was closed, the defendant moved to exclude the testimony referred to in the exception as stated, on the ground that the Solicitor had failed to offer the testimony then proposed to be offered, in connection with the loss of money by Mrs. Lyman. The Solicitor had in the meantime offered the testimony of Mrs. Lyman, that when she left she did not recollect whether she took the key outside the drawer in the passage bureau and put it in the bunch given Miss Lancashire, or left it in the drawer.

Miss Lancashire testified that soon after Mrs. Lyman left she hunted for said key and did not find it in the bunch of keys given her by Mrs. Lyman, or in the drawer where it belonged. Policeman Thompson testified that he found a key on the person of the defendant when arrested, and it fitted the drawer where Mrs. Lyman kept her money, as testified to by her.

The Court refused to exclude the testimony which had been submitted.

The defendant then testified in his own behalf. His testimony sent up with the record purports to explain his reasons for being at the house of Bishop Lyman, his conduct while there, the facts connected with the keys, and, if believed, fully rebutted all the evidence tending to show his guilt.

The defendant asked the Court to give a number of instructions to the jury, of which the following were refused:

"3. That there is no evidence to connect the defendant with the larceny of the money deposed to by Mrs. Lyman.

4. That if the jury believe that Mrs. Lyman left her money in her bureau drawer generally unlocked, and that various other persons had access to her room, the evidence is too vague and uncertain to warrant a verdict against the prisoner.

6. That the evidence in this case is too vague and uncertain to be submitted to the jury, and that they will return a verdict of not guilty.

7. That the fact that the prisoner was concealed in a room in a house is not evidence that he entered it with the intent to commit any particular felony.

8. The evidence in this case being circumstantial only, in order to convict on such evidence it must exclude in the opinion of the jury every other reasonable hypothesis inconsistent with the guilt of the party accused. (Other instruction was given as a substitute for this, but defendant excepts and alleges that it is not given as asked in words or in substance.)

10. If evidence insufficient to support verdict must not go to the jury, although some."

His Honor charged the jury: " That where the act proven against the defendant admits equally of two constructions, one of which would point to the guilt and the other to the innocence of the accused, it is the duty of the jury to give the benefit of the doubt to the accused and render a verdict of not guilty.

101—48

That unless the jury believe that the defendant committed the former larcenies deposed to by Mrs. Lyman, the fact that they were committed is no evidence against him.

That if the jury shall be satisfied beyond a reasonable doubt from the testimony that the defendant entered the house mentioned in the indictment with intent feloniously to steal the money, goods or chattels of T. B. Lyman or Mrs. Lyman, then the jury will find the defendant guilty.

It is admitted that the defendant entered the house, and the only question for the jury is with what intent he entered. If the jury have any reasonable doubt as to his entering the house with intent to steal the money, goods or chattels of T. B. Lyman or Mrs. Lyman, then the defendant should be acquitted

The State relies upon circumstantial evidence to show the intent. It is a rule of law that if, in such cases, there is a reasonable hypothesis or supposition arising out of the testimony and consistent with the innocence of the defendant, the jury must treat such hypothesis as true, and acquit the defendant. It is also a rule that in such cases every material circumstance in the chain of evidence relied on for conviction must be as fully proved as if the conviction depended upon proving it. Another mode of expressing the same idea is found in the rule that no chain of circumstantial evidence is stronger than the material links in the chain.

It is the duty of the jury to ascertain and determine what circumstances, if any, tending to show the intent of the defendant in entering the house, have been proven beyond a reasonable doubt. If the jury find that circumstances are so proven which exclude every reasonable hypothesis connected with the idea that the defendant had any intent not criminal in entering the house, or entered with any intent other than to steal the goods, chattels or money of T. B. Lyman or Mrs. Lyman, then they should return a verdict of guilty.

The jury should not be influenced by any reference to the race or color of the defendant, or by the fact that he belongs to a particular race. On the other hand, the jury are not to be influenced by the fact that the law has prescribed any particular punishment for the offence charged in the bill."

The defendant excepted to the refusal of the Court to give the instructions asked, as above set forth, and also to the instructions given.

There was a verdict of guilty. Motion in arrest of judgment. Motion refused, and judgment and appeal.

*The Attorney General,* for the State.

*Messrs. J. B. Batchelor* and *John Devereux, Jr.,* for the defendant.

DAVIS, J. (after stating the case.) The motion in arrest of judgment was upon the ground that the bill charged two distinct offences, to-wit: "The intent to steal the goods, chattels and money of T. B. Lyman, and also with intent to steal the goods, chattels and money of Mrs. Anna W. Lyman."

The indictment is under section 996 of *The Code,* and the entering the house " with *intent* to commit a felony or other infamous crime therein," constitutes the gravamen of the charge. He was not charged with larceny. The offence charged is the felonious entering the dwelling house with *intent* to steal, and if that entry was with the intent to steal anything of value, whether one thing or many things, or from one person or many persons, it constituted but one offence, but one crime, and whether convicted or acquitted he could not be again put upon trial for the *entry* and *intent.* But at all events the objection comes too late after verdict. *State* v. *Brown,* 2 Winston, 54; *State* v. *Fore,* 1 Ired., 378; *State* v. *Tytus,* 98 N. C., 705.

The exception to the refusal of the Court to exclude the testimony of Mrs. Lyman was properly overruled by the Court below.

The facts testified to by her were sufficiently connected with other facts to render them competent as tending to show defendant's guilt.

The first exception in regard to the charge of his Honor was to the refusal to give the third instruction asked. Assuming that the fact that the defendant was found concealed in the house could only raise a suspicion of some guilty intent, and was not sufficient by itself to warrant a verdict of guilty upon a charge of entering with any specific felonious intent, the facts that money had been stolen, that the defendant had been frequently in the house, that he had been paid money and knew where it was kept, that he had on his person a key that unlocked the drawer in which it was kept, and other facts testified to, constitute some evidence—much more than a mere *scintilla* or suspicion—of guilt, and tend to give direction to the intent of the defendant. The able counsel for the defendant, in his earnest argument, pointed to the fact that the evidence showed that the drawer in which the money was kept was often left unlocked, and that servants had access to it, and it might have been stolen by them. That is true; and the single isolated fact that money was missing, if standing alone, would constitute no evidence to go to the jury, but when taken in connection with other facts and circumstances, no one of which alone would warrant a verdict of guilty, yet, when taken all together, may amount to full and conclusive proof. It is the *union* of many facts and circumstances, each one insufficient in itself, that often makes the strongest proof. Money is stolen—this fact by itself would convict no one. B. knew where the money was—this is a circumstance, but would not by itself be sufficient to go to the jury upon a charge against him; he is afterwards seen about the place where the missing money was kept—this may create a suspicion; he conceals himself—another suspicious circumstance; a key is found upon his person that opens a drawer near by where he was concealed—another very

suspicious circumstance, but by itself too weak to justify a conviction. Circumstances accumulate, each one by itself of no great strength, but when united, like the bundle of twigs in the fable, they become very strong. *State* v. *White,* 89 N. C., 462, and cases there cited.

Counsel relies upon *The State* v. *Wilkerson,* 72 N. C., 376. In that case there is no evidence of asportation, which was a necessary ingredient in the crime with which the defendant was charged. There was no evidence that connected the defendant with the killing of the hog, and only the circumstances of looking upon the dead hog and flight that pointed to defendant's guilt. In the case before us there were many circumstances, and it may be easily distinguished from the case of *State* v. *Wilkerson;* and we are not called upon to express an opinion upon the sufficiency of the evidence to convict in that case, in regard to the correctness of which I myself entertain doubt.

There was no error in refusing, for the reasons stated, the third prayer for instructions, and for the same reasons there was no error in refusing the fourth and sixth instructions asked for.

The seventh prayer was properly refused because it asked the Judge to charge upon an isolated fact. If the concealment had been the only evidence it might become material for us to consider the exception, but there was other evidence.

The eighth prayer was given in the charge of his Honor in language unmistakable and fully as strong as could be properly asked by the defendant.

The tenth prayer for instruction was also properly rejected. There was evidence to go to the jury, and its sufficiency was for them. *State* v. *Powell,* 94 N. C., 965, and the cases there cited.

We have examined with care the charge of his Honor as given, and can see no error of which the defendant can complain.                                   Affirmed.