## ELLIOTT v. STATE

(No. 1831; March 20, 1931; 30 Pac. (2d) 791)

For the plaintiff in error there was a brief by *Clarence G. Cypreansen* and *W. B. Holliday,* of Casper, and oral argument by *Mr. Holliday.*

On behalf of the State there was a brief by *Ray E. Lee,* Attorney General, *O. O. Natwick,* Deputy Attorney General, and *Wm. C. Snow,* Assistant Attorney General, and oral argument by *Mr. Natwick.*

RINER, Justice.

On March 24, 1931, B. X. Elliott, as defendant, was found guilty, by the verdict of the jury in the District Court of Natrona County, of aggravated assault and battery, and thereon was given a jail sentence of two months and adjudged to pay a fine of $100. From this judgment and sentence, he prosecutes this proceeding in error.

The case is before us upon the information, verdict, judgment, and sentence of the court, and a bill of exceptions containing only (1) the judgment and sentence aforesaid, (2) the motion for a new trial filed by Elliott March 31, 1931, (3) the order of the District Court overruling said motion, with due exception reserved thereto, and (4) the court's order granting additional time within which to prepare and present the defendant's bill of exceptions. None of the trial proceedings, neither the evidence nor the instructions of the court in the case appear in said bill.

The petition in error sets forth two alleged errors, the first of these being that the District Court erred in overruling plaintiff in error's motion for a new trial, and the second that "the judgment and sentence of the court is for an offense with which said defendant,—this plaintiff in error,—was not charged at all, or was not sufficiently charged."

It will be proper to determine first, whether the denial of the motion for the new trial was error. The motion contained three alleged grounds. Of these, one sets forth that, during the trial, the court refused to grant the defendant a continuance, on account of the absence of a defense witness. As heretofore indicated,

the proceedings had at the trial being not incorporated in the bill of exceptions, it is impossible for us to determine the merits of this ground. The rule is that "refusal to grant a continuance, on the ground of the absence of witnesses, is not a ground for reversal, where no substantial rights of the defendant are prejudiced thereby." 17 C. J. 281. The motion for a new trial alone shows no prejudice suffered by the defendant through the court's action in the premises. For aught that appears here, the facts which the defendant desired to prove by this witness were already sufficiently established by the testimony of other witnesses. If this were true, there would be no prejudice accruing to the defendant. 17 C. J. 281.

Another ground of the motion for a new trial is that the District Court erred in declining to sustain the defendant's motion in arrest of judgment, said last mentioned motion reading:

"Comes now the defendant B. X. Elliott and moves the Court for an arrest of Judgment in the above entitled case for the reason and upon the grounds, that the information in this case failed to state facts sufficient to constitute an offense punishable under the laws of the State of Wyoming.".

The third ground upon which a new trial was requested was that the verdict of the jury was contrary to law, in that the information filed in the case "did not and does not state a cause of action against defendant punishable under the laws of the State of Wyoming."

These two grounds may be considered together as raising the question whether the information, when attacked by motion in arrest of judgment, failed to state facts constituting an offense under our law. The information filed by the County and Prosecuting Attorney of Natrona County against the defendant charges that:

"B. X. Elliott late of the County aforesaid, on or about the 16th day of February, 1931, in the County of Natrona, in the State of Wyoming, did then and there wilfully and unlawfully and feloniously perpetrate an assault and battery upon the person of T. A. Cummins with intent then and there and thereby to commit a felony, to-wit: to kill and murder the said T. A. Cummins."

It is urged for the plaintiff in error that this charge is defective in that it does not allege any assault "with intent to commit any act made a felony or a crime even, under our law," it being said that none of the elements constituting murder in either of its degrees or manslaughter are set up.

In II Wharton's Criminal Law (11th Ed.), it is stated that:

"In an indictment for an assault with intent to commit an offense, the same particularity is not necessary as is required in the indictment for the commission of the offense itself."

In Lacefield v. The State, 34 Ark. 275, 36 Am. Rep. 8, the court says that:

"The rule is well settled that in an indictment for an assault with intent to commit an offense, the same particularity is not necessary, as is required in an indictment for the actual commission of the offense; and an indictment for an assault with intent to murder need not state the means made use of by the assailant to effect his murderous intent. They are matters of evidence to the jury. Robinson v. State, 5 Ark., 659; 2 Whar. Crim. Law, 1281; 2 Bish. Crim. Proceed., sec. 77; United States v. Herbert (Fed. Cas. No. 15, 354), 5 Cranch, 87; Harrison v. State, 2 Coldu., 232; State v. Dent, 3 Gill & Johns, (Md.) 8."

The Case of Commonwealth v. Doherty, 10 Cushing 52, was one where the defendant was charged with and convicted of breaking and entering a dwellinghouse with intent to commit a rape. Holding that a

motion in arrest of judgment should not be sustained, the opinion on the point of interest here expresses the Court's views thus:

"The second ground for the motion in arrest is, because the crime of rape, which the defendant is alleged to have intended to commit, is not fully and technically set forth.

"The position taken by the defendant assumes that the felony intended to be perpetrated by one making a burglarious entry, is to be technically charged. But this is not so. From the very nature of the case in many instances, the charge in its formal details could not be given. Suppose the alleged intent were to commit a larceny, but of what particular goods, or the property of what particular individual, it could not be known unless the theft was actually perpetrated.

"A general intent to steal goods would complete the offense, and the averment of such intent without more is sufficient; the crime was complete by breaking and entering with an intent to steal goods. Opinion of the court by *Shaw*, C. J., in *Josslyn* v. *Commonwealth*, 6 Met. 239."

In State v. Peak, 130 N. C. 711, 41 S. E. 887, 888, the Court, after stating,—"that the offense *intended* to be committed is not sufficiently charged 'comes too late after verdict.' *State* v. *Christmas*, 101 N. C. 749, 8 S. E. 361, and cases there cited," rather pertinently remarks:

"As the constituent elements of the offense intended to be committed were not perpetrated and can not be proved, why, as the decisions say, charge more than an intent to murder, to steal, or to rape?"

Section 33-415, Wyo. Rev. St. 1931, provides among other things that:

"No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected; * * * for want

of the averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

In The People v. Swenson, 49 Cal. 388, by indictment the defendant was accused "of the crime of an assault with intent to commit murder, committed as follows, to-wit: The said C. G. T. Swenson, on or about, etc., did assault with intent to commit murder one Benjamin Cook." Affirming the action of the trial court in declining to sustain a motion in arrest of judgment, because the facts stated in the indictment did not constitute a public offense, the court in part said:

"Again: The words charging the intent, taken in connection with the language which immediately precedes and follows them, and with the general nomination of the crime, 'an assault with intent to commit murder'—a crime which can exist only where the intent is to murder the person alleged to have been assaulted —sufficiently show an attempt to allege the appropriate intent. They cannot be excluded as meaning nothing, but must be considered, at most, as a defective allegation. It is only when a quality material and necessary to the constitution of a crime, is altogether omitted, and not where such quality is imperfectly described, that a judgment will be set aside as not sustained by the indictment, and entered without authority of law; unless it be a case where the Court has no Jurisdiction to enter the judgment at all."

It seems reasonably plain, in view of these authorities and our statute above quoted, that the sufficiency of the information on the point raised was, at the very least, questioned at too late a stage in the trial, and should have been reached by motion to quash.

The suggestion is presented that the information does not charge an offense, under section 32-210, Wyo. Rev. St. 1931,—the particular section under which the

defendant was found guilty—"because it fails to allege that the assault and battery was committed maliciously." The statute just referred to reads:

"If any person shall unlawfully and maliciously inflict upon another person, either with or without any weapon or instrument, any grievous bodily harm, or shall unlawfully or maliciously cut, stab or wound any other person ,the person so offending shall be fined not more than one thousand dollars, or confined in the county jail not more than one year, or both. (L. '90, c. 73, § 22; R. S. '99, § 4959; C. S. '10, § 5798; C. S. '20, §7075.")

It will be noted, however, that the information does allege that the assault and battery was committed "wilfully and unlawfully and feloniously." These words, taken in their full significance under the authorities as we read them, include the element "maliciously."

Discussing this question, the Supreme Court of Nebraska, in Whitman v. State, 17 Neb. 224, 22 N. W. 459, used this language:

"The question for determination is, whether or not the words 'unlawfully, willfully, purposely, and feloniously' include in the meaning the full signification of the word 'maliciously.'

"Bouvier defines malice to be 'The doing a wrongful act intentionally, without just cause or excuse.' 2 Law Dict. (14th Ed.), 91. Webster gives the law definition as follows: 'With wicked or mischievous intentions or motives'; and the word 'maliciously' as meaning 'in a malicious manner; with malice, enmity, or ill will.' He defines felonious as follows: 'Having the quality of felony; malignant, malicious, villainous, traitorous, perfidious; indicating or proceeding from a depraved heart or evil purpose, as felonious homicide, felonious thief.' The meaning of 'purposely' as given by Webster is 'by purpose or design; intentionally; with premeditation'; and the same authority defines 'unlawfully' as 'in an unlawful manner; in violation of law and right; illegally.' 'Wilfully' he defines as follows: 'In a willful

manner; obstinately; stubbornly; by design; with set purpose.' It will be seen that the words employed in the indictment include the full signification of the word 'maliciously.' "

So, in Commonwealth v. Carson, 166 Pa. 179, 30 Atl. 985, we find it said:

"In drawing an indictment under the statute it is well to use its language, but as 'feloniously' includes 'maliciously' the substitution of the former for the latter is not fatal to the count in which it appears."

The point urged here is consequently not well taken.

It is contended that, under the rule that an indictment or information charging an offense denounced and defined by statute, should be as fully descriptive of the offense as is the language of the statute, and should allege every substantial element of the offense as so defined, the information at bar is fatally defective when viewed in the light of section 32-210, *supra*. Referring to that section, it is pointed out that the information contains no allegation that grievous bodily harm was inflicted on T. A. Cummins or that he was cut, stabbed, or wounded. Whatever may be the rule were the information attacked by motion to quash, we are inclined to the view that this question, in the case at bar, could not be raised by motion in arrest of judgment or assigned as error, for the first time, in this court by petition in error.

The information, in the instant case, was framed evidently under section 32-207, Wyo. Rev. St. 1931, by following the statutory language. This section reads:

"Whoever perpetrates an assault, or assault and battery, upon any human being with intent to commit a felony, shall be imprisoned in the penitentiary not more than fourteen years. (L. '90, c. 73, § 18; R. S. '99, § 4956; C. S. '10, § 5795; C. S. '20, § 7072.)"

Other sections of the same compilation which shed light on the matter in hand are section 32-208, which defines the offense of criminal assault thus:

"Whoever, having the present ability to do so, unlawfully attempts to commit a violent injury on the person of another, is guilty of an assault and shall be fined in any sum not exceeding fifty dollars. (L. '90, c. 73, § 20; R. S. '99, § 4957; C. S. '10, §5796; C. S. '20, § 7073.)"

And section 32-209, which provides a penalty for the crime of assault and battery, its phraseology being:

"Whoever, in a rude, insolent or angry manner unlawfully touches another, is guilty of an assault and battery, and shall be fined not more than one hundred dollars, to which may be added imprisonment in the county jail not exceeding six months. (L. '90, c. 73, Sec. 21; R. S. '99, Sec. 4958; C. S. '10, Sec. 5797; C. S. '20, Sec. 7074.)"

These sections which have just been quoted were all in large measure borrowed from the criminal code of the State of Indiana. That State, however, does not seem to have had a statute similar in character to our section 32-210 hereinabove set forth.

In Woodworth v. State, 145 Ind. 276, 43 N. E. 933, the defendant was tried and convicted under an information which charged that:

"George Woodworth, on the 11th day of June, 1895, at and in the county of St. Joseph, and State of Indiana, did then and there unlawfully and feloniously make an assault upon the person of one William Cassiday, with the intent then and there, unlawfully and feloniously to steal, take and carry away," etc.

A written motion in arrest of judgment was filed, alleging that the facts stated in the information did not constitute a public offense because its statement of the crime charged contained (1) no allegation that

the defendant attempted to perpetrate a violent injury on the person of Cassiday, and (2) no allegation that the defendant, at the time of the alleged assault, had the present ability to commit injury upon Cassiday's person. The trial court overruled this motion and the alleged error, in so doing, came before the Supreme Court of Indiana for review. While it was held that the information would not have been sufficient, under previous decisions of the court, to withstand a motion to quash, had such a motion been timely made, the action of the trial court asserted to have been erroneous was affirmed, the reasoning of the opinion reaching that conclusion being as follows:

"An assault is defined by section 1910 (1983), *supra,* as an unlawful attempt to commit a violent injury on the person of another, coupled with the present ability to commit such injury, and it was in this sense that the word was used in the information. And the same, therefore, contained all the essential elements of the offense, although defectively stated. While this, under our decisions, was not the proper way to allege the assault, yet the issue joined by the plea of not guilty was such as necessarily required proof on the trial of all the elements of an assault, without which it will not be presumed that the jury or the court would have found the defendant guilty. *Quick* v. *Miller, supra; Weinberger* v. *Shelly,* 6 W. & S. 336.

"Besides, the information charges a public offense in the language of the statute (section 1909, 1982, *supra),* although not in language as specific and particular as required by the decisions of this court, but this is all that is required as against a motion in arrest of judgment. * * *.

"Appellant was fully advised by the information of the crime with which he was charged, and was bound to know the section of the statute upon which it was predicated. If he desired a more specific and definite statement of the offense, his remedy was by motion to quash. The general rule is that all objections, not jurisdictional, must be made at the first opportunity, or they

will be deemed waived. The policy of the law is that a party shall not be permitted to take the chance of a favorable result, and then if disappointed for the first time complain.

"Section 1891, R. S. 1881 (section 1964, Burns' R. S. 1894), provides that 'In the consideration of questions which are presented upon an appeal, the Supreme Court shall not regard technical errors or defects or exceptions to any decision or action in the court below, which did not, in the opinion of the Supreme Court, as set out in Woodworth v. State 145 Ind. 276, 43 N. E. 933, prejudice the substantial rights of the defendant.'

"The pleading, as we have shown, was broad enough to admit proof of all the elements of the crime charged, and we must, therefore, after verdict, presume such proof was made. 1 Bishop Crim. Proced., section 707a."

In the case at bar, the defendant was charged, in the language of the statute, with having perpetrated an assault and battery on Cummins, united with an intent to kill and murder him. No limitation, whatsoever, was affixed by the pleader to this charge of assault and battery, and it was expressly characterized as unlawful, willful, and felonious in character. When these elements were coupled as well with the grave charge of an intent to kill and murder, it would certainly seem that the statement of the offense in its entirety was broad enough to admit proof of an assault and battery which inflicted upon Cummins "grievous bodily harm," the distinguishing element of one phase of the crime defined in section 32-210, supra. If the defendant wished a more specific description of the act and its consequences of which he was being accused, the way lay open to him by a motion to quash. Having been content to enter upon the trial and go to a verdict upon such a broad and general charge, we think he cannot now complain that details were not furnished.

There is another view of this matter which fairly leads to the same result. Section 33-1005 reads in part as follows:

"Upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto."

The New York Court of Appeals, in the well considered case of Keefe v. The People, 40 N. Y. 348, early discussed the effect to be given to a statute of this character. Judge Grover, speaking for the Court, very pointedly remarked:

"It is said, in substance, that the statute applies to cases only where the indictment for the higher offense includes all the averments necessary to constitute the lesser, with the addition thereto of certain facts essential to the higher, and the latter are unproved, that the defendant may, by virtue of the statute, be rightly convicted of the lesser offence. If this is the only effect of the statute it is merely declaratory of the common law, as is shown in the opinion in the case itself, in regard to a conviction for murder upon an indictment for petit treason. The language of the statute clearly admits of a more extended application, and I apprehend that such was the intention in its enactment. Various criminal acts were made by the chapter in question offences of the same general name, but differing in degree, and in the punishment to be inflicted, according to the circumstances under, and the intent with which they were committed; such as forgery, arson, burglary, &c. I think the true construction of the statute is, that when the act for which the accused is indicted is the same act for which he is convicted, the conviction of a lower degree is proper, although the indictment contains averments constituting the offence of the highest degree of the species of crime, and omits to state the particular intent and circumstances characterizing a lower degree of the same crime. If this be the true construction, it follows that, under an indictment for murder in the first degree, the accused may be convicted of any degree of murder, or manslaughter, for the unlawful killing of the identical person charged by the identical means charged in the indictment. This would not include a case where the person killed was not the same as charged in the indictment, nor where

the means of effecting the death were materially variant from those the indictment charges."

In 2 Bishop's New Criminal Procedure 31, § 63, the author says:

"The Degrees of Assault,—under the common law and the statutes, are numerous. The lowest degree is a simple assault. Another degree is formed by adding a battery to it. Another by adding to it, or to assault and battery, the intent to do a specified ultimate wrong. Another, by adding the use of some instrument implying special danger. Another, by its being made on a person of a special class. And in some of the States there are very many degrees."

Recurring to our statutes quoted above, we think that the offenses defined in sections 32-208, 32-209, and 32-210, are but inferior degrees of the crime denounced by section 32-207. They ascend by steps in seriousness and grade of punishment, from assault to an assault or assault and battery coupled with an intent to commit a felony. Applying here the reasoning of Judge Grover,—which we are inclined to believe is sound,— so far as appears by the record before us, the conviction of defendant for an inferior degree of crime than that charged in the information should stand, the act proved being the same as the one charged, and the means of committing it not being materially different despite the fact that the information does not set forth the particular circumstances characterizing such inferior degree. The result thus reached harmonizes with what has heretofore been said by this court in Brantley v. State, 9 Wyo. 102, 61 Pac. 139.

Substantially reaching the same conclusion is the case of Dotson v. State, 14 Okl. Cr. 50, 166 Pac. 902. There the defendant was tried on a charge of assault with intent to kill, and convicted of assault with a sharp and dangerous weapon, with intent to do bodily

harm. Upholding the conviction, the appellate court said:

"The second proposition is based upon the contentention of counsel that the information charges assault with intent to kill; that there is no charge of assault with a sharp and dangerous weapon with intent to do bodily harm without justifiable or excusable cause, and therefore the offense for which the plaintiff in error was convicted is not included in the information.

This assignment is wholly without merit. An information or indictment charging assault with intent to kill includes every form of assault down to and including simple assault. The contention is not supported by any authority."

Of similar purport is the case of Graven v. State, 22 Ala. App. 39, 111 So. 767. The following excerpt from the opinion of the court sets forth both the facts and the law as applied, as they are pertinent here:

"This appellant was indicted for the offense of an assault with intent to murder Claude Lawler, the indictment being in Code form. He was convicted by the jury of the offense of an assault with a weapon, and the jury assessed his fine at $500.

"Errors are assigned, 90 in number, and by assignments 1 and 2 appellant insists, and elaborately argues, that the court erred in overruling the motion of defendant to arrest the judgment in this cause and to discharge the defendant after such arrest of judgment had been entered. The motion in arrest of judgment was predicated upon the ground:

" 'That an indictment for an assault with intent to murder, in Code form, that is to say, without expressly specifying the mode in which the assault is alleged to have been committed, does not comprehend or include a charge of assault with a weapon, and that the jury having found the defendant guilty of a charge not comprehended in the indictment and thereafter having been discharged, that the defendant had been placed in jeopardy and had been convicted of an offense of

which he had not been charged in the indictment, and therefore the court had no right to enter a judgment upon the jury's verdict and that the defendant was entitled to his discharge.

"That there is no merit in this insistence is too well settled for discussion. In the first place by express terms of the statute it is provided: When an indictment charges an offense of which there are different degrees. the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto; and the defendant may also be found guilty of any offense which is necessarily included in that with which he is charged, whether it be a felony, or a misdemeanor. Code 1923, § 8697. That an asasult with a weapon is included in the charge of an assault with intent to murder has been expressly decided in this State. Jones v. State, 79 Ala. 23; Horn v. State, 98 Ala. 23, 13 So. 329; Curry v. State, 120 Ala. 366, 25 So. 237; Payne v. State, 148 Ala. 609, 42 So. 988; Lovett v. State, 10 Ala. App. 72, 64 So. 643."

See, also: State v. Graham, 120 S. C. 216, 112 S. E. 923; Reynolds v. State, 11 Tex. 120; Hussey v. State, 144 Miss. 380, 109 So. 871; and State v. Mahoney, 122 Maine 483, 120 Atl. 543.

It follows from what has been said, that there was no error in overruling defendant's motion for a new trial, and the judgment of the District Court of Natrona County should be affirmed. We are not unmindful of the previous decision of this court in McGinnis v. State, 16 Wyo. 72, 91 Pac. 936. The result in that case was reached by a divided court, Mr. Chief Justice Potter dissenting. This court, as now constituted, feel that the reasoning of his dissenting opinion presents the better view and one more in harmony with modern criminal jurisprudence. Insofar, therefore, as the majority opinion in that case is in conflict with the views hereinabove expressed, and the result we have reached, it is disapproved.

54

The enlightened present-day tendency in criminal law and practice, is to remedy as far as reasonably possible, the evils pointed out by one of England's greatest Judges, Sir Matthew Hale, when he said:

"That in favour of life great strictnesses have been in all times required in points of indictments, and the truth is, that it is grown to be a blemish and inconvenience in the law, and the administration thereof; more offenders escape by the over easy ear given to exceptions in indictments, than by their own innocence, and many times gross murders, burglaries, robberies, and other heinous and crying offenses, escape by these unseemly niceties to the reproach of the law, to the shame of the government, and to the encouragement of villany, and to the dishonour of God. And it were very fit, that by some law this over-grown curiosity and nicety were reformed, which is now become the disease of the law, and will I fear in time grow mortal without some timely remedy."

2 Hale's Pleas of the Crown 193.

*Affirmed.*

KIMBALL, C. J. and BLUME, J., concur.