Gary L. EVANSON, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4507.

Supreme Court of Wyoming.

Feb. 26, 1976.

T. Michael Golden, Brimmer, Mac-Pherson & Golden, Rawlins, signed the brief and appeared in oral argument on behalf of the appellant.

V. Frank Mendicino, Atty. Gen., and William M. Sutton, Senior Asst. Atty. Gen., Cheyenne, signed the brief, and William M. Sutton appeared in oral argument on behalf of the appellee.

Before GUTHRIE, C. J., and Mc-CLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

Upon receiving a call that there was a man in west Rawlins wielding a gun and chasing two other men, a deputy sheriff went to the scene. The appellant-defendant in this case was pointed out to the deputy as the individual about whom the complaint was made and the deputy approached him and asked for identification. The under-sheriff arrived and the defendant's auto-mobile searched. Upon a firearm being discovered, defendant bolted and ran. The deputy and undersheriff, going different directions, gave chase and caught up with the defendant at a gasoline bulk plant. He was apprehended on the roof of a building and, when brought to the ground, was ordered to get face down. The deputy, the only one present at the time, placed a handcuff on defendant's right wrist and was bringing the cuffed hand around behind defendant's back when the defendant suddenly stood up and pulled an automatic pistol. At this moment, the deputy stood holding the handcuff, the other end of which was attached to the defendant. The appellant pointed the pistol directly at the deputy's stomach, who dropped the hand-cuff and went for his own gun. The defendant then ordered, "Don't do it," and attempted to squeeze the trigger of the handgun. The deputy, while the defend-

ant's attention was briefly averted, seized the opportunity and dove under a nearby trailer. The defendant began to run, the deputy drew his own weapon and fired two shots at him, one of which struck the defendant in an elbow, as later learned. The defendant disappeared around a building. The deputy went around one side and the undersheriff, who now had come on the scene, went around the other side of the building, coming up behind the defendant. At that time the defendant was holding the pistol in his left hand with an ammunition clip in his right hand and was trying to push a shell out of the top of the clip. The undersheriff aimed a shotgun at the defendant, ordering him to drop his gun. The pistol and clip were dropped by the defendant. An examination of the clip revealed a nicked cartridge case indicating that it had apparently jammed and, for that reason, did not fit quite right in the gun but inspection indicated that it would fit the weapon perfectly.

The defendant was charged with violation of § 6–69, W.S.1957:

"Whoever perpetrates an assault, or assault and battery, upon any human being with intent to commit a felony, shall be imprisoned in the penitentiary not more than fourteen years."

The information alleged violation of § 6–69, but was couched in such terms that it would also embrace § 6–70B, W.S.1957, as amended by Laws, 1965, Ch. 165, § 1, which section then provided as follows:

"Whoever, while armed with a dangerous or deadly weapon, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

The latter section, subsequent to the offense charged in this case, was amended by adding the phrase "including an unloaded firearm," following the word "weapon." (Laws, 1975, Ch. 70, § 1.) The amend-

ment is inapplicable to any consideration of this appeal. The defendant was tried to a jury, a verdict of guilty of aggravated assault under § 6–70B returned and the defendant was sentenced to the Wyoming State Penitentiary. The State did not allege in the information § 6–70B as a provision of the criminal statutes violated.

In this appeal, the defendant claims the following errors in the district court:

1. The trial court's instruction that aggravated assault proscribed by § 6–70B, W.S.1957, 1975 Cum.Supp., as amended, Laws, 1965, Ch. 165, § 1, is a lesser included offense of assault and battery with the intent to commit a felony proscribed by § 6–69, W.S.1957, erroneously stated the law in that under the facts of this case aggravated assault while armed with a deadly weapon is not a lesser included offense.

2. The trial court refused to give defendant's offered instruction to the effect that the gun in question must be loaded at the time of the alleged assault.

3. The State's evidence was insufficient to support the jury's verdict of guilty of the crime of aggravated assault under § 6–70B, W.S.1957, as amended.

The information charged that the defendant at a time and place:

"* * * did unlawfully and feloniously attempt to commit a violent injury upon the person of Lin L. Bashford, he, the said Gary L. Evanson, then and there having the present ability to commit said injury, by then and there unlawfully, feloniously, purposely and with premeditated malice, shooting at the said Lin L. Bashford with a certain .22 caliber automatic pistol then and there loaded with ammunition, which the said Gary L. Evanson then and there had and held in his hand, with intent then and there and thereby him, the said Gary L. Evanson, unlawfully, feloniously, purposely and with premeditated malice, to kill and murder the said Lin L. Bashford, all in violation of Section 6–69, Wyoming Statutes, 1957."

No reference to § 6–70B was made in the information.

After defining for the jury murder in the first degree, murder in the second degree, involuntary manslaughter, aggravated assault and simple assault, the jury was instructed that if it should find the defendant not guilty of assault to commit murder in the first degree, to then in a like manner successively, one at a time, consider assault with intent to commit murder in the second degree and assault to commit involuntary manslaughter, then:

"If you should determine from the evidence introduced in the case that the defendant is not guilty of a felonious assault with intent to commit murder in the first or second degrees or manslaughter, then again the law permits you to determine whether the defendant is guilty beyond a reasonable doubt of aggravated assault, as defined.

"Again, a lesser included offense which the law permits you to consider is whether the defendant is guilty beyond a reasonable doubt of simple assault as defined herein if you should determine that he is not guilty of aggravated assault."

The jury in order to find the defendant guilty of a crime defined at any step was required to do so beyond a reasonable doubt. It was further explained that if the jury found the defendant did not commit any of the offenses, he must be acquitted.

Such form of instruction is known as a step instruction [1] designed to permit a jury to step by step consider a defendant's guilt from the most serious primary charge, descending through each included offense to the least serious. Rule 32(c), W.R.Cr.P., specifically authorizes a jury to consider included offenses:

"The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

This provision is identical to Rule 31(c) of the Federal Rules of Criminal Procedure.[2]

The technique adopted by the trial judge in presenting included offenses to the jury is an accepted one. In *Fuller v. United States*, 1968, on rehearing, 132 U.S.App.D. C. 264, 407 F.2d 1199, 1227–1228, cert. den. 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125, the court discussed the doctrine of lesser included offenses and explained what it considered to be the proper procedure for presenting them to the jury:

"When a greater and lesser offense are charged to the jury, the proper course is to tell the jury to consider first the greater offense, and to move on to consideration of the lesser offense only if they have some reasonable doubt as to the guilt of the greater offense. A jury that finds guilt as to the greater offense does not enter a verdict concerning guilt of the lesser offense. The reason for this absence of consideration is not any inconsistency between the offenses. It rather reflects the very 'inclusion' that defines the lesser offense as one 'included' in the greater. * * *"

It should be marked that the rule uses the expression "an offense necessarily included in the offense charged." In Fuller, the court set out in footnote 28, p. 1228 of its opinion, what it considered to be a precise analysis of what constitutes a necessarily included offense, found in Model Penal Code § 1.07(4), which defines an offense as included when:

---

1. A most interesting comment on "The Lesser Included Offense Instruction—Problems With Its Use," by John W. Davis, appearing in III Land and Water Law Review 587 (1968), points up some engaging observations in use of the step instruction. We express no approval or disapproval of the author's views.

2. See the discussions of Federal Rule 31 (c), F.R.Cr.P., in 2 Federal Practice and Procedure, Wright, § 515, p. 371, and 8 Moore's Federal Practice—Criminal Rules, 2d Ed., § 31.03, p. 31–9.

"(a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

"(b) it consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein; or

"(c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission."

The Fuller court on the same page gave what it referred to as the customary definition:

"* * * A lesser included offense is one which is necessarily established by proof of the greater offense, and which is properly submitted to the jury, should the prosecution's proof fail to establish guilt of the greater offense charged, without necessity of multiple indictment."

■ It was put in a little different way by the same court in *Kelly v. United States*, 1966, 125 U.S.App.D.C. 205, 370 F. 2d 227, 228, cert. den. 388 U.S. 913, 87 S.Ct. 2127, 18 L.Ed.2d 1355, for a lesser offense to be "necessarily included" in the offense charged, it must be such that the greater offense cannot be committed without also committing the lesser. To the same effect, but not stated so concisely, is *Brantley v.* State, 1900, 9 Wyo. 102, 108, 61 P. 139, 140.

■■ The facts of the case before us fit the foregoing definition. An assault with intent to commit ·murder, a felony, was charged. A firearm was used by pointing it at the victim. An assault with a deadly weapon is an unlawful attempt, coupled with a present ability to commit a violent injury [3] upon the person of another with a deadly weapon. A weapon, when used in a manner capable of producing and likely to produce death or great bodily injury, is a deadly weapon. To constitute an assault with a deadly weapon (aggravated assault, § 6–70B), actual injury need not be caused. The elements of the offense are the unlawful attempt with unlawful intent (maliciously) to accomplish a violent injury upon the person of another, the use of a deadly weapon in that attempt and the present ability to accomplish the injury. *People v. Rocha*, 1971, 3 Cal.3d 893, 92 Cal.Rptr. 172, 479 P.2d 372. In *Elliott v. State*, 1934, 47 Wyo. 36, 45, 30 P.2d 791, 793, are several definitions making it clear that the term "maliciously" embraces, amongst other things, the element of unlawful intent.

■ Comparing the statutes defining then, murder and murder in the second degree, we readily see that the elements necessary to prove the intent to commit one of these offenses as a part of felonious assault, include all those necessary to establish aggravated assault while armed with a deadly weapon. Section 6–54, W.S.1957, 1975 Cum.Supp. (Laws, 1973, Ch. 136, § 1), states:

"Whoever purposely and with premeditated malice, * * * kills any human being, is guilty of murder in the first degree."

Section 6–55, W.S.1957, states:

"Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, * * *."

■■ An assault with intent to commit a felony, murder in the first degree, as such a felony, requires all the elements of aggravated assault with a deadly weapon plus premeditation and the intent to kill. The use of a deadly weapon implies an intent to do so by that means of causing death. Murder can be accomplished in any number of ways but the deadly weapon is the method of the particular offense

---

3. Section 6–70B must be read with § 6–67, for a definition of an assault:

"Whoever, having the present ability to do so, unlawfully attempts to commit a violent injury on the person of another, is guilty of an assault * * *."

charged. In assault with intent to commit murder in the second degree, there is required only the added element of an intent, without premeditation, to cause the death of the victim, a much more serious intended result than an attempt to commit a violent injury—something less than death.

There is no such an offense as assault with intent to commit the felony crime of involuntary manslaughter as an offense necessarily included in an assault while armed with a deadly or dangerous weapon with intent to murder because the intention to kill would prevent the crime from being involuntary as well as being without malice and malice includes the element of intent.[4] The only reason we mention this is to raise a flag of caution. See *State v. Parmely*, 1948, 65 Wyo. 215, 199 P.2d 112, for the proposition that there is no such thing as assault with intent to commit involuntary manslaughter, and *Brantley v. State*, 1900, 9 Wyo. 102, 61 P. 139, on the proposition that assault—of the type there considered—to commit voluntary manslaughter is included in assault to commit murder. This court has consistently over the years held aggravated assault to be a lesser included offense to assault with intent to murder. *State v. Woodward*, 1952, 69 Wyo. 262, 240 P.2d 1157; *State v. Parmely*, supra; *Elliott v. State*, 1934, 47 Wyo. 36, 30 P.2d.791. While not involving aggravated assault but assault and battery by stabbing and cutting, the same principle is approved in *Brantley v. State*, supra, where the defendant failed to request an instruction incorporating assault and battery as an included offense.

We see no merit in defendant's argument that since aggravated assault is now a felony, it is not a lesser included offense but one of the same degree and equal in seriousness. The lesser included offense concept is grounded on other bases than the term "felony." The descending succession of offenses can be measured by more than one standard. This is apparent when we examine the analysis of the Model Penal Code which is herein quoted, from *Fuller v. United States* supra, which includes consideration of the comparative seriousness of injury or risk of injury to the victim or a lesser kind of culpability. It takes little thought and no statement of authority to conclude that it is more grave to kill an individual than to wound him with a deadly weapon or just point a loaded pistol at him, as here.

The legislature has likewise considered aggravated assault with a firearm of less seriousness by the greater leeway it has allowed the trial court in assessing a penalty. Assault with intent to commit a felony carries a penalty of not to exceed fourteen years in the penitentiary. Under a general statute, § 6–6, W.S.1957, the court may impose a fine of not more than one thousand dollars as part of the punishment. The penalty for aggravated assault with a firearm under § 6–70B, W.S.1957, 1975 Cum.Supp., is "shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both." The trial judge need not commit to the penitentiary.

It was not necessary for the State to allege in the information any facts other than those required to charge assault with intent to commit a felony, applicable to the circumstances, in violation of § 6–69, W.S. 1957. *State v. Woodward*, supra, 69 Wyo. at 271, 240 P.2d at 1159. The offense, constituting a violation of § 6–70B, aggravated assault with a firearm, under the facts of this case is a necessarily included offense when the defendant is charged with felonious assault and the felony alleged as intended is murder.

---

4. Manslaughter is defined by § 6–58, W.S. 1957:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, * * *."

While perhaps not a model of clarity, the information in this case did allege a violation of § 6–70B, W.S.1957, even though that statutory provision was not referred to in the information.

■ Although Rule 9(a), W.R.Cr.P., does provide for stating the official or customary citation of the statute which the defendant is alleged to have violated, it goes on to provide as follows:

"\* \* \* Error in the citation or its omission or any other defect or imperfection which does not tend to prejudice any substantial right of the defendant upon the merits or to mislead the defendant to his prejudice shall not be grounds for dismissal of the indictment or information or for reversal of a conviction. \* \* \*"

This provision was patterned after Rule 7(c) of the Federal Rules of Criminal Procedure, and the federal rule has been interpreted to permit a conviction where a violation was alleged even though an erroneous statute was referred to. E. g., *United States v. Calabro*, 2 Cir. 1972, 467 F.2d 973, cert. den. 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587, reh. den. 411 U.S. 941, 93 S.Ct. 1891, 36 L.Ed.2d 404; *United States v. Van West*, 1 Cir. 1972, 455 F.2d 958. In this instance, there is nothing to suggest that in light of the specific allegations of the information the defendant was misled with respect to the circumstances involved in the violation, nor does it appear possible that any jeopardy could ensue. Under these authorities and others, it would have been appropriate for the trial court to submit the violation of § 6–70B, W.S.1957, to the jury without regard to its status as an included offense under § 6–69, W.S.1957. E. g., *People v. Dietschweiler*, 1974, 21 Ill. App.3d 707, 315 N.E.2d 585; *State v. Reavis*, 1973, 19 N.C.App. 497, 199 S.E.2d 139; *Cole v. State*, Tenn.Crim.App.1974, 512 S.W.2d 598; *Williams v. City of Petersburg*, Va.1975, 217 S.E.2d 893.

■ It is mentioned in passing that the defendant enjoys an advantage because he is automatically acquitted of the offense charged and those included other than the one of which he is found guilty. *Phillips v. Territory*, 1872, 1 Wyo. 82, 84; *Green v. United States*, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, 61 A.L.R.2d 1119.

■ The facts as outlined bring the case within the scope of *Shafsky v. State*, Wyo.1974, 526 P.2d 60. In that case, the loaded ammunition clip was not locked into position and the pistol would not fire. It was there held that the defendant was guilty of assault with a dangerous or deadly weapon when he held it against the stomach of the chief of police. In this appeal now before us, the clip was in the pistol but malfunctioned when the trigger was pulled by the defendant while pointing it at a deputy sheriff's stomach. We hold the pistol to be a dangerous or deadly weapon and he assaulted his victim while so armed.

■ It was for the jury to decide whether or not the weapon was dangerous or deadly upon the evidence as it appears in the record. As is our practice, we examine and accept as true the evidence favorable to the successful party, leaving out of consideration entirely evidence of the unsuccessful party in conflict therewith, and we give to evidence of the prosecution, as the successful party, every favorable inference which may be reasonably and fairly drawn therefrom. *Shafsky v. State*, supra.

In *Wagner v. United States*, 9 Cir. 1959, 264 F.2d 524, 530, cert. den. 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548, reh. den. 361 U.S. 857, 80 S.Ct. 48, 4 L.Ed.2d 97, it was held that it need not be shown by direct evidence that the gun was loaded as long as there is sufficient evidence from which the jury can infer that the gun was loaded. The same court in *Evalt v. United States*, 9 Cir. 1967, 382 F.2d 424, held that where a robber pointed a pistol directly at a bank teller and demanded that the money be turned over and robber was apprehended four days later with a loaded pistol in his packsack such evidence was sufficient for

a jury to find that the gun was loaded at the time of the robbery and that it was a dangerous weapon.

It can be fairly inferred that the loaded ammunition clip was in the weapon when pointed at the deputy sheriff and it was ready to fire. A loaded pistol is a dangerous and deadly weapon. *State v. Seebold,* 1975, 111 Ariz. 423, 531 P.2d 1130. A loaded pistol is lethal by its very nature.

Pointing a loaded pistol at another constitutes an assault with a deadly weapon even though it fails to fire when the trigger is pulled. *State v. Gortarez,* 1968, 103 Ariz. 395, 442 P.2d 842. Nor does it require firing of the gun. *State v. Andrews,* 1970, 106 Ariz. 372, 476 P.2d 673. It is not necessary that the ammunition clip be in the pistol. *State v. Hansen,* 1968, 20 Utah 2d 189, 436 P.2d 227. It is not necessary that the defendant's attempt be successful. *People v. Mayfield,* 1974, 184 Colo. 399, 520 P.2d 748, where the defendant's aim was bad.

*Baker v. United States,* 5 Cir. 1969, 412 F.2d 1069, cert. den. 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509, was a case in which the appellant urged that the Government had failed to prove that the gun was loaded during its unlawful use. The court made a statement most appropriate to this case. Paraphrasing it, that a gun is commonly known, regarded and treated by society as a dangerous device by both a reasonable person and the person at whom it is pointed without a determination as to whether a round was in the chamber. The primary capacity of a gun to harm by discharging of a bullet from the muzzle, plus its apparent capacity to carry out that harm, combined with the highly charged atmosphere under which it is flourished, is a complex set of circumstances in which the person on the scene is in jeopardy of harm. The court went on to hold that a gun used with and at the scene of a bank robbery is as a matter of law a dangerous weapon and that those on the scene of the robbery are placed in an objective state of danger regardless of whether there is proof that the gun was loaded. We are not confronted here with the problem of whether there is proof that the gun was loaded. It was. Only by the grace of the Almighty the weapon did not fire, certainly through no innocence of the defendant. The defendant is fortunate that he was not tried for murder. The evidence was more than sufficient to support the jury's verdict of guilty.

There was no error.

Affirmed.