476 P.2d 666

The STATE of Arizona ex rel. Moise BER-
GER, Maricopa County Attor-
ney, Petitioner,

v.

SUPERIOR COURT of the State of Ari-
zona, IN AND FOR the COUNTY OF
MARICOPA, the Honorable Thomas Tang,
Judge thereof; and Josephine HALETKY,
real party in interest, Respondents.

No. 10169.

Supreme Court of Arizona,
In Banc.

Nov. 10, 1970.

Moise Berger, County Atty., Phoenix, for petitioner.

Ross P. Lee, Public Defender by Patricia Ann Whitehead, Deputy Public Defender, Phoenix, for respondent Josephine Haletky.

McFARLAND, Justice.

This is a Petition for a Writ of Special Action filed by the Maricopa County Attorney. The real party in interest is one Josephine Haletky (Respondent) who, in August of 1969 was charged with, and pleaded guilty to, the charge of Assault with a Deadly Weapon in violation of A.R.S. § 13–249. In conjunction with her plea the respondent also entered a plea of not guilty by reason of insanity, under the provisions of A.R.S. § 13–1621.01. On

October 9, 1969, after a trial on the issue of insanity *only,* the jury returned a verdict of "not guilty by reason of insanity" and respondent was committed to the Arizona State Hospital.

On July 30, 1970, the Superior Court, Judge Tang presiding, ordered filed two certificates from psychiatrists to the effect that the respondent is no longer a danger to herself or others and the court set a trial date for a jury to determine if she should be released, "in accordance with A.R.S. § 13–1621, et seq." However on June 18, 1970, this court handed down its decision in State v. Shaw, 106 Ariz. 103, 471 P.2d 715, that the provisions of A.R.S. § 13–1621.01 were unconstitutional as they related to the "bifurcated trial", more details of which are set forth hereafter. In Shaw we were confronted with the question of wherther bifurcated trial as provided for in A.R.S. § 13–1621.01 was in violation of due process. Our holding was limited to the question of whether the procedure for bifurcated trial set forth in § 13–1621.01 was unconstitutional. We purposely did not pass upon the effect of holding these sections to be unconstitutional on the other portions of the Act, awaiting until a case was presented which would give both sides an opportunity to present arguments.

The county attorney of Maricopa County, although not an attorney of record in the original proceeding in Shaw, filed a motion for a rehearing in which he asked this court to reconsider the original decision and set forth his reasons therefor.

On August 25, 1970, the county attorney filed this Petition and on the same date an ex parte order was issued by this court staying all proceedings in the Superior Court pending our determination in this action. In his "Prayer for Relief", the county attorney requested that:

"1. An order to be entered staying all proceedings * * *

"2. To set a time and day at which Petitioner's application * * * can be heard.

"3. That this court permanently restrain the Superior Court of the State of Arizona, and the Honorable Judge Thomas Tang * * * from holding a hearing pursuant to A.R.S. § 13–1621.01, Subsection I * * *.

"4. That if this court accepts jurisdiction * * * (but declines to grant the permanent relief) * * * that this court issue a written opinion stating the reasons therefor. * * *

"5. That this court order such other and further relief as may seem necessary and proper."

On September 22, 1970, after an informal hearing we granted 20 additional days for the filing of briefs, in accordance with which a memorandum was received from the county attorney. Neither responsive pleadings nor memoranda were filed on behalf of respondent.

The county attorney would seem to shift his position in his memorandum making his chief argument for reconsideration of this court's decision in State v. Shaw, supra, concluding with the request

"For the foregoing reasons it is respectfully requested that the Honorable Court reconsider its decision in State v. Shaw and hold that A.R.S. § 13–1621 et seq. is constitutional or in the alternative to limit the *Shaw* holding to the question of bifurcated trials."

However, the issue set forth in the county attorney's petition is whether this court should permanently restrain the lower court from proceeding with a trial to determine if the defendant should be released.

We are unable to agree with the county attorney in his petition that the court should be permanently enjoined from proceeding with a jury trial hearing. We have expedited this hearing for the reason that the trial of the respondent has been delayed by the filing of the county attorney's petition and the granting of this court of his request for a temporary stay.

The respondent was tried and found not guilty by reason of insanity and ordered committed in a bifurcated trial before our decision in Shaw. We must first pass upon the validity of her commitment. Is Shaw retroactive? Does it have the effect of invalidating a commitment resulting from a bifurcated trial?

The question of retrospective application of decisions of courts of last resort recently received great attention. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, was the first major impact in this area although, as pointed out by Professor Mishkin, there were previous individual opinions by justices (either concurring or dissenting) urging the court's departure from the traditional application of full retroactivity. Mishkin, The Supreme Court—Foreword, 79 Harv.L.Rev. 56, 57. Mr. Justice Clark, in Linkletter, reviewed the background of the rule of absolute retroactivity and traced a history of cases wherein the courts gradually moved away from its strict application. He concluded that:

"While the cases discussed above deal with the invalidity of statutes or the effect of a decision overturning long-established common-law rules there seems to be no impediment—constitutional or philosophical—to the use of the same rule in the constitutional area where the exigencies of the situation require such an application. It is true that heretofore, without discussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule. Petitioner contends that our method of resolving those prior cases demonstrates that an absolute rule of retroaction prevails in the area of constitutional adjudication. However, we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, 'We think the Federal Constitution has no voice upon the subject.'" 85 S.Ct. at 1737.

However, the result in Linkletter was the application of limited retroactivity in that Mapp v. Ohio would not affect conviction which had become final, that is "* * * where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio." Mapp did apply to those cases still on direct review after the date of decision.

The court followed this principle in Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, where it declined to give retrospective effect to the rule in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

Then in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the court stepped further away from retroactivity when it ruled that the decisions of Escobedo and Miranda "should apply only to trials begun after the decisions were announced." The court said:

"At the same time, we do not find any persuasive reason to extend Escobedo and Miranda to cases tried before those decisions were announced, even though the cases may still be on direct appeal. Our introductory discussion in Linkletter, and the cases cited therein, have made it clear that there are no jurisprudential or constitutional obstacles to the rule we are adopting here. See 381 U.S., at 622–629, 85 S.Ct. 1731 at 1733–1737. In appropriate prior cases we have already applied new judicial standards in a wholly prospective manner. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). Nor have we been shown any reason why our rule is not a sound accommodation of the principles of Escobedo and Miranda."

Finally in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, which involved a determination as to the extent that Wade and Gilbert were retroactive, the court applied a rule of almost pure prospective application. The court handed

down its decision in Stovall on the same day as Wade and Gilbert but nevertheless refused to make Wade and Gilbert retroactive to Stovall.

"We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date. The rulings of *Wade* and *Gilbert* are therefore inapplicable in the present case." Stovall v. Denno, 388 U.S. at 296, 87 S.Ct. at 1969, 18 L.Ed.2d 1203.

The underlying principle running through these cases is that a court of last resort may determine for itself whether its decisions shall be retrospective or prospective without infringing on the Constitution. This principle was enunciated in Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, by Justice Cardozo where the court reviewed a decision of the Montana Supreme Court, which was given a purely prospective effect:

"This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the Constitution of the United States is infringed by the refusal.

"We think the Federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward."

Linkletter extended the rule from only statutory or common law areas where the court stated that "there seems to be no impediment—constitutional or philosophical —to the use of the same rule in the constitutional area where the exigencies of the situation require such an application."

In the matter of Application of Billie, 103 Ariz. 16, 436 P.2d 130, we held In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527, to be retroactive. However, we based our decision on the interpretation of the intent of the United States Supreme Court as to its retroactivity. Such an in-

tent as to retroactivity is not to be found in our decision in State v. Shaw, supra.

In fact this court in the past, has given a purely prospective application to its decisions. In Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770, we said:

"The principle that the decision will be made prospective only is not unknown. Where judicial interpretations of taxing acts have been overruled resulting in hardship, we have not hesitated to direct the decision to the future only." [citations omitted]

And of course, under Linkletter, this rule is similarly applicable to the constitutional area.

The constitutional question arose in Shaw because this court was faced with what procedure should be followed at the new trial on remand and held that the procedure as it existed prior to A.R.S. § 13–1621.01 is "re-instated"—terminology which of itself indicated a prospective application of the decision. We further pointed out that the bifurcated trial, although couched in the terms of a statute, was in actuality a rule of criminal procedure, which, if literally followed, could result in depriving a defendant of due process. But, as the court said in Johnson v. New Jersey, supra:

"We here stress that the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved. The right to be represented by counsel at trial, applied retroactively in Gideon v. Wainwright, supra [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799], has been described by Justice Schaefer of the Illinois Supreme Court as 'by far the most pervasive * * * [o]f all of the rights that an accused person has.' Yet Justice Brandeis even more boldly characterized the immunity from unjustifiable intrusions upon privacy, which was denied retroactive enforcement in *Linkletter*, as 'the most comprehensive of rights and the right most valued by civilized men.' To reit-

erate what was said in *Linkletter*, we do not disparage a constitutional guarantee in any manner by declining to apply it retroactively. See 381 U.S., at 629, 85 S.Ct. 1731, at 1737 [14 L.Ed.2d 601].

"We also stress that the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved. Accordingly as *Linkletter* and *Tehan* suggest, we must determine retroactivity 'in each case' by looking to the peculiar traits of the specific 'rule in question.' 381 U.S. at 629, 85 S.Ct. 1731, at 1737; 382 U.S., at 410, 86 S.Ct. 459, at 461."

As to the "specific rule in question" here, Shaw never determined that previous trials under the bifurcated trial procedure violated due process per se. The use of the procedure in other states was discussed and it was noted that they avoided the unconstitutional results but only by the use of a cumbersome procedure allowing the redundant introduction of proof of insanity at both trials. We then pointed out that the alternative interpretation could result in an irrebuttable presumption of criminal intent which would be a violation of due process. This court in sending Shaw back for a new trial interpreted the procedure intended by the legislature in the bifurcated trial to be a violation of due process. An interpretation which would not so violate due process would emasculate the act in such a way that it would not be carrying out the purpose for which it was intended. Shaw, supra.

In other words the procedure to be followed in the bifurcated trial would violate due process of law under the interpretation in Shaw. Therefore the rationale of the decision itself is neces-

sarily prospective in its application. We hold therefore, that Shaw is not retroactive and applies only to cases which commenced after the date of the decision.

In passing upon the county attorney's petition to permanently restrain the lower court from proceeding with a jury trial it is necessary that we also examine the effect of Shaw on the other portions of A.R.S. § 13–1621.01.

It is no innovation in the law that certain provisions of a statute may remain viable despite the fact that other clauses contained therein are declared unconstitutional; provided that such remaining provisions are easily separable from the tainted parts and that their employment will materially advance the causes of justice. In McCune v. City of Phoenix, 83 Ariz. 98, 317 P.2d 537, this court stated:

"Whether the entire proceeding of the board is of no effect depends upon whether the invalid features of the statute are separable from the valid features so that the inoffensive portion may remain as law. We have several times announced the guide to determine whether such a separation may be made without voiding the entire statute. Generally, we have said that if the valid parts are independently effective and enforceable as law and if the valid and invalid portions are not so intimately connected as to raise the presumption that the legislature would not have enacted the one without the other and if the invalid portion was not the inducement for the passage of the entire act, the court will not disturb the constitutional portion of the act. Gherna v. State, 16 Ariz. 344, 146 P. 494; Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658; Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457. It is not absolutely essential to severability that the constitutional and unconstitutional features be contained in separate sections. Gherna v. State, supra." Id. at 106, 317 P.2d at 542.

In State v. Coursey, 71 Ariz. 227, 225 P.2d 713, we said:

"This court on numerous occasions has held that if part of an act is unconstitutional and by eliminating the unconstitutional portion the balance of the act is workable, only that part which is objectionable will be eliminated and the balance left intact. Gherna v. State, 16 Ariz. 344, 146 P. 494; Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457." Id. at 236, 225 P.2d at 719.

See also, United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138; Selective Life Ins. Co. v. Equitable Life Assur. Soc., 101 Ariz. 594, 422 P.2d 710; Cooley, Constitutional Limitations Vol. 1 at p. 360 (Eighth Ed. Little & Brown Co.) Cooley lists numerous citations in support of his statement that

"A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional."

The question of whether the remaining portions of a statute shall be upheld when other portions are eliminated as unconstitutional depends upon the intent of the legislature. If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted them independently, the failure of the latter will not necessarily render the other parts of the statute invalid and it may be enforced as to those portions that are constitutional.

In the instant case Judge Tang evidently was of the opinion that Shaw did not affect the procedure of a person committed to the State Hospital under A.R.S. § 13–1621.01, and we assume that it was for this reason that the county attorney brought this action to prevent him from proceeding with a trial to determine the sanity of Josephine Haletky, the real party in interest, under the procedures set forth in § 13–1621.01. To pass upon this question requires an examination of the act amending § 13–1621 and adding § 13–1621.-01. The original § 13–1621 provided:

"A person shall not be tried, convicted or punished for a public offense while he is insane."

§ 13–1621, subsec. A, as amended provides:

"A. A person shall not be tried, convicted or punished for a public offense while, as a result of a mental illness or defect, he is unable to understand the proceedings against him or to assist in his own defense."

The remainder of the section sets forth procedure to determine whether the defendant because of mental illness or defect is thereby prevented from being tried, convicted or punished for a public offense, because he is unable to understand the proceeding against him or assist in his own defense.

Section 13–1621.01 sets forth procedure for a bifurcated trial where a defendant has pled not guilty by reason of insanity and procedure for commitment to the Arizona State Hospital when the jury finds his condition justifies such commitment to an appropriate mental institution (to be released only after a determination by a jury that he is no longer a danger to himself or to others.) [1] No question was raised as to the constitutionality of § 13–1621 in the original Shaw decision or in the instant case.

Section 13–1621.01 relates to the bifurcated trial and proceedings in the event defendant is found not guilty by reason of insanity. It is evident the legislature had three objectives in passing this legislation.

1. § 13–1621.01 was quoted in the footnote in State v. Shaw, 106 Ariz. 103, 471 P.2d 715.

First, to provide a more detailed and complete procedure than set forth in § 13–1621.

Second, to provide for the bifurcated trial, and the third which we are concerned with in the instant case was to provide a procedure for determination:

1. As to whether, when a defendant is found not guilty by reason of insanity, he should be confined in an appropriate institution; and, 2. If so confined, the procedure to be followed to subsequently secure his release if he is no longer a danger to himself or others.

We must therefore determine whether the third objective of the legislature is severable from the second. The language of the Act providing the third objective shows the intent of the legislature to set up a better procedure which would prevent the release of a defendant who is found not guilty by reason of insanity where the defendant is dangerous to be at large and provides a better and safer procedure of preventing his release as long as this danger continues. This is independent of the question as to whether he is not guilty by reason of insanity.

As we said in McCune, supra, it is not "absolutely essential to severability that the constitutionality and unconstitutionality features be contained in separate sections." Therefore eliminating the portion of the Act declared unconstitutional under Shaw and those parts entwined with the remainder of the third portion would read: "The question of not guilty by reason of insanity would be considered as the first interrogatory but submitted under procedure as set-forth in Shaw." The remaining interrogatories would remain the same.

Where the defendant is found not guilty by reason of insanity there would then be submitted to the jury the interrogatory under "D" paragraph 2, "Does the defendant's present mental condition justify commitment to an appropriate mental institution (to be released only after a determination by a jury that he is no longer a danger to himself or to others.") Except for the word "First", which is stricken from line five of subsection K, the remaining sections would remain the same up to "L" which is entwined with the bifurcated trial and prior procedure would be used and the right to waive a jury trial would be guided by Arizona Constitution, Art. 6, § 17, A.R.S. and § 13–1593, Criminal Code, A.R.S.

■ The provisions herein in question therefore are obviously separable from the invalid portions of the section.

Nor do we find anything in the statute which gives rise to a presumption that the legislature would not have enacted such provision without the bifurcated trial procedure.

Therefore those portions of A.R.S. § 13–1621.01 which have not been stricken and are separable and capable of a valid enforcement independent of the unconstitutional provisions may be set forth as follows:

13–1621.01. trials where defense if not guilty by reason of insanity asserted

(The question of not guilty by reason of insanity considered as interrogatory No. 1.)

Those remaining sections, eliminating those not applicable read as follows:

2. Where a verdict of not guilty by reason of insanity is returned. The first line up to word "does" not applicable.

The remainder applicable will read: "Does the defendant's present mental condition justify commitment to an appropriate mental institution (to be released only after a determination by a jury that he is no longer a danger to himself or to others.)"

E. Not applicable.

F. Not applicable.

G. If the answer to interrogatory No. 2 is negative, the court shall enter a judgment of not guilty by reason of insanity and release the defendant.

H. If the answer to interrogatory No. 2 is affirmative, the court shall enter a judgment of not guilty by reason of insanity and commit the defendant to an appropriate mental institution making provisions for security.

I. Upon certification by two psychiatrists that the defendant is no longer a danger to himself or to others, the court shall hold a jury trial to determine whether the defendant is to be released. The jury trial shall be conducted in all respects as a civil proceeding and the defendant shall have the burden of proof. The court shall take appropriate action to release the defendant or return him to the institution in accordance with the finding of the jury.

J. In any case involving the defense of not guilty by reason of insanity, both the defendant and the state shall have the right to have the defendant examined by qualified psychiatrists appointed by the court for the purpose of presenting testimony.

K. No defendant shall be compelled to waive his privilege against self-incrimination or to make any statements to any person as a result of the procedures relating to the defense of insanity. Any statment made by a defendant to an expert who has been appointed by the court under this § 13–1621.01 shall be inadmissible at the trial, unless the defendant waives his privilege against self-incrimination, but shall be admissible at any trial to determine whether the defendant is to be released from a mental institution.

L. Not applicable—governed by procedure under Ariz.Const. Art. 6, § 17 and § 13–1593, A.R.S. in regard to right to waive a jury trial.

Accordingly, the Order Staying Proceedings, dated September 22, 1970, is dissolved; the relief prayed for in the Petition for Special Action is denied.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.