515 P.2d 324

The STATE of Arizona, Appellee,

v.

Ralph Alexander CLEMONS, Appellant.

No. 2757–PR.

Supreme Court of Arizona, In Banc.

Nov. 1, 1973.

**80**

Gary K. Nelson, Atty. Gen., by William J. Schafer, III and Thomas A. Jacobs, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is a petition for review of a decision and opinion of the Court of Appeals, Division One, Department A, upholding a verdict and judgment of the Superior Court of Maricopa County denying the release of Ralph Alexander Clemons from confinement in the Arizona State Hospital.

On review we must determine whether § 13–1621.01 A.R.S. is in conflict with the equal protection clause of the Fourteenth Amendment to the United States Constitution as interpreted by the United States Supreme Court in Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

The facts necessary for a consideration of the question before us are as follows. Defendant, Ralph Alexander Clemons, was charged by information in three counts for burglary, aggravated battery, and rape. On his own motion he was examined pursuant to § 13–1621 A.R.S. for a determination of his competency to stand trial. Two court-appointed psychiatrists diagnosed Clemons' condition as a species of schizophrenia and recommended that he would be unable to assist in his own defense, and should not be required to stand trial at that time. Consequently Clemons was committed to the Arizona State Hospital until it was subsequently determined by hospital officials that he had regained competency and could return to the court to face the charges pending against him.

The trial court, sitting without a jury, found Clemons not guilty by reason of insanity. The court further found that Clemons' present mental condition justified continued confinement, and accordingly ordered him committed to the State Hospital until such time as he could meet the conditions for release.

Less than one month after his acquittal and commitment, two psychiatrists certified that Clemons was no longer a danger to himself or to others and could be returned to the court for release proceedings in ac-

cordance with § 13–1621.01 (I) A.R.S. Trial was had to a jury which found that Clemons "is not now a danger to himself or to others." On motion by the State a new trial was granted. At the new trial the jury was instructed that Clemons had to show, by a preponderance of the evidence, that he was not then, nor would be become in the reasonably foreseeable future, a danger to himself or to others. This latter trial resulted in a verdict unfavorable to Clemons and he appealed the decision to the Court of Appeals which affirmed the verdict and judgment. State v. Clemons, 19 Ariz.App. 584, 509 P.2d 715 (1973). Clemons timely filed a petition for review which we granted.

Clemons contends that the procedures prescribed by § 13–1621.01 A.R.S. for the commitment and release of persons who have been acquitted of criminal charges for the reason of insanity deny equal protection of the law. He bases that contention on the following premises: (1) that the procedures for commitment and release of persons such as himself differ substantially from those applicable to other mentally ill persons who are committed by way of the civil process; (2) that under § 13–1621.01 A.R.S. the burden on the State for establishing present insanity as a condition to commitment is more lenient than the burden which must be borne by a petitioning party in a civil commitment hearing, and the procedure for release is more burdensome than the corresponding procedures available to civilly committed patients, thus resulting in an unfair discrimination; and (3) that there is no rational basis for distinguishing between persons who are subject to commitment after a verdict of not guilty by reason of insanity and all others who are subject to civil commitment.

Section 13–1621.01 of the Arizona Revised Statutes, enacted by the legislature in 1968, purports to set forth a comprehensive scheme for the disposition of criminal cases in which an insanity defense has been interposed. That statute provides for a bifurcated trial in which the issues of guilt and insanity are to be determined in separate proceedings. If, at the second trial, the trier of fact determines that the defendant was insane at the time of commission of the offense, that same trier of fact then addresses itself to the question of whether defendant's present mental condition justifies commitment. When called upon to determine the constitutionality of the bifurcated trial system, this court held such procedure to be a denial of due process. State v. Shaw, 106 Ariz. 103, 471 P.2d 715 (1970). The question then arose as to whether the other provisions of § 13–1621.01 remained intact, or whether they fell with the bifurcated trial feature, thus necessitating a return to Rule 288 of the Rules of Criminal Procedure (1956), 17 A.R.S. In answer to the doubts engendered by Shaw, supra, we later held that the bifurcated trial feature was severable from the rest of the statute. State ex rel. Berger v. Superior Court, 106 Ariz. 365, 476 P.2d 666 (1970). At that time we were neither faced with, nor did we pass upon, the question of whether the salvaged portions could withstand an equal protection attack.

Thus, the procedure which remained, and the procedure under which defendant was committed, is one in which a defendant who pleads insanity as a defense to criminal charges is subjected to but one trial, but the same trier of fact must still determine the present need for commitment. There is no requirement that additional evidence be received on the issue of present insanity, although the statute in no way precludes the receipt of such evidence. If the trier of fact finds that the defendant's condition so warrants, the court orders commitment.

Release of patients committed pursuant to § 13–1621.01 A.R.S. is governed by subdivision I of that same section. Release is available only when two psychiatrists have certified that the patient is no longer a danger to himself or to others, and when

the patient is able to prove to a jury (unless the court accepts waiver of jury) that he no longer suffers from mental illness and should be released. This subdivision specifically states that the "defendant shall have the burden of proof."

In contrast to the above outlined procedure, mentally ill persons who are involuntarily committed because they are dangerous to themselves or to the person or property of others are afforded a full hearing, with counsel, for which testimony of at least two examiners and two lay witnesses is required. § 36–514 A.R.S. Once a patient has been committed he has at least two avenues of release. Release by conditional or absolute discharge is available whenever the superintendent of the hospital determines that the patient is no longer in need of treatment and confinement. § 36–524 subds. A, D, A.R.S. In addition the patient can annually petition for a judicial hearing on the need for his continued confinement. § 36–516 A.R.S. The hearing is conducted "in accordance with § 36–514," the commitment statute, so the burden is upon the one opposing the petition to show that the patient still requires continued treatment and confinement.

The disadvantage which a person committed after being found not guilty by reason of insanity suffers vis-a-vis his civilly committed counterpart is most apparent at the release stage. Clearly a patient committed under § 13–1621.01 A.R.S. bears the burden of proving his sanity before being released. The civilly committed patient, on the other hand, often need take no affirmative action at all and when he does seek release through a hearing, he still does not have the burden of proving his sanity.

There is, then, a substantial difference between the criminal commitment and release statute and the civil commitment and release statute, and persons who have been committed under § 13–1621.01 A.R.S. find it more difficult to obtain their release from confinement than those civilly committed under § 36–514, et seq., A.R.S.

Having found that there is a difference, we must determine whether, as the Court of Appeals found, there is a rational basis which would save the statute from constitutional infirmities.

There is implied in a verdict of not guilty by reason of insanity that the person did the acts complained of, and we agree with the Court of Appeals that there is a difference between a person who has actually committed a crime and one who has not. Yet, however reasonable and logical the distinction may be, we question whether this is a legally "rational" distinction in light of the decisions of the United States Supreme Court.

In 1966, the United States Supreme Court struck down, as a denial of equal protection, a New York statute under which an inmate nearing the end of his penal sentence was administratively committed to a mental institution without any of the procedural safeguards which were afforded to other mentally ill persons without criminal backgrounds. The respondent in that case sought to justify the differences in the procedures on the theory that insane persons with criminal backgrounds are more dangerous than insane persons without criminal backgrounds. The Supreme Court rejected that contention, stating:

"* * * Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. * * * Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill *at all.*" Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L. Ed.2d 620, 624 (1966).

The court concluded that " * * * there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." 383 U.S. at 111–112, 86 S.Ct. at 763.

After the Supreme Court's decision in Baxstrom, supra, the New York Court of Appeals had occasion to determine the applicability of the principle enunciated therein to another of its statutes which provided for mandatory commitment of persons found not guilty of criminal charges by reason of insanity. The court upheld the statute in the following language:

> " * * * We see no reason why a man who has himself asserted that he was insane at the time the crime was committed and has convinced the jury thereof, should not in his own interest and for the protection of the public be forthwith committed for detention, examination and report as to his sanity." People v. Lally, 19 N.Y.2d 27, 33, 277 N.Y.S.2d 654, 659, 224 N.E.2d 87, 91 (1966).

But the court went on to hold that, in keeping with the Baxstrom rationale, all of the procedural safeguards afforded to those civilly committed would have to be afforded those committed after a successful plea of not guilty by reason of insanity.

We read Lally, supra, as standing for the proposition that a person has been acquitted of criminal charges by reason of insanity may be summarily committed for examination and report as to his present sanity, but that ultimate commitment for any indefinite period requires that such person be afforded all of the procedural safeguards which are available to those who are civilly committed.

The next significant federal case to apply the Baxstrom principle was Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968). There the United States Court of Appeals for the District of Columbia Circuit held that the principle enunciated in Baxstrom applies as well to the situation in which a defendant is acquitted of criminal charges upon his own plea of insanity. The court recognized that a person who is insane at the time of commission of a crime is not necessarily insane at the time of his acquittal, and that therefore, for the purpose of commitment to a mental institution, such a person should, and in fact must, by virtue of Baxstrom, be treated as all others who are civilly committed. The court, as in Lally, supra, approved of mandatory commitment for the purpose of examination, but held that ultimate commitment for an indefinite period requires a hearing on the issue of present insanity which is substantially similar to hearings in civil commitment cases, and an opportunity for release. The court sanctioned court-supervised release where such was not required in civil cases, but emphasized that in all cases the burden of proof for release has to be the same.

The most recent United States Supreme Court case in the area is Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed. 2d 435 (1972). Jackson deals with a situation wherein a deaf mute with criminal charges filed against him was committed pursuant to a statute which authorized commitment of an incompetent person until he became competent to stand trial. The facts in Jackson, supra, concern only the question of commitment or detention of an accused because of incompetency to stand trial. See Pretrial Mental Commitment of the Accused, 33 Louisiana Law Review 456 and Remedies for Individuals Wrongly Detained in State Mental Institutions Because of Their Incompetency to Stand Trial: Implementing Jackson v. Indiana, 7 Valparaiso University Law Review 203. Relying on Baxstrom, supra, however, the court stated:

> " * * * by subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by

**84**

thus condemning him in effect to permanent institutionalization * * * Indiana deprived petitioner of equal protection of the laws under the Fourteenth Amendment. [footnote omitted]" 406 U.S. at 730, 92 S.Ct. at 1854.

 Admittedly, the Baxstrom and Jackson cases, supra, are distinguishable on their facts from the case at hand, but the underlying principle is the same and we believe the United States Supreme Court has indicated that where there is a substantial difference in either the commitment or release of persons accused or convicted of a crime on one hand and those who are not so accused or convicted on the other, the equal protection clause applies. We hold that § 13–1621.01 A.R.S. is unconstitutional in this regard.

 This court has recently enacted Rules of Criminal Procedure which cover the methods to be followed in all criminal matters commencing after 1 September 1973. Because of the doubt cast upon these statutes, § 13–1621 and § 13–1621.01 A.R.S., by this decision and prior decisions of this court, State v. Blazak, 105 Ariz. 216, 462 P.2d 84 (1969); State v. Shaw, 106 Ariz. 103, 471 P.2d 715 (1970); State ex rel. Berger v. Superior Court, 106 Ariz. 365, 476 P.2d 666 (1970), and there being no present rule for the court to follow in cases commenced prior to 1 September 1973, we believe that there will be less confusion if we apply Rule 11 (Incompetency and Mental Examinations) and Rule 25 (Procedure After Verdict or Finding of Not Guilty by Reason of Insanity) of the Rules of Criminal Procedure 1973, to all criminal matters pending after the issuance of the mandate in this case even though commenced prior to 1 September 1973.

As to the release of defendant so committed, civil release provisions of § 36–516 A.R.S. shall apply.

The opinion of the Court of Appeals, 19 Ariz.App. 584, 509 P.2d 715 (1973) is vacated.

Reversed and remanded for new hearing pursuant to § 36–516 A.R.S.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.