478 P.2d 71

STATE of Arizona, Appellee,

v.

Michael David SHANNON, Appellant.

No. 2100.

Supreme Court of Arizona,
In Banc.

Dec. 16, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

McFARLAND, Justice.

The defendant, Michael David Shannon, was charged with the offense of Armed Robbery. Prior to his trial, on March 18, 1969, he moved that he be examined by psychiatrists to determine whether he was sufficiently sane to stand trial and assist counsel with his defense. After considering the psychiatric reports, the trial court found Shannon capable to stand trial but, because of a plea of "not guilty by reason of insanity" ordered a bifurcated trial under A.R.S. § 13-1621.01. Counsel for Shannon makes no claim here that the court's finding was erroneous.

Shannon's trial commenced on July 22, 1969 and was concluded with a jury verdict that Shannon was guilty of robbery and, in the second part of the bifurcated trial, that he was legally sane at the time of the commission of the crime. During the course of the trial, the court ordered that the part of the information, which alleged that the defendant committed the robbery while armed, be stricken, and the testimony clearly supports the court's action, since there was insufficient evidence that Shannon was armed.

The facts are simple—Shannon entered a U-Tote'm Market at approximately 9:45 P.M. and demanded that the clerk, behind the counter, hand over the money.

The clerk testified as follows as to the defendant being armed:

"Q Now, this object that he had at his side, you said it looked like a .22 revolver you have at home.

"A Yes, sir.

"Q Did you ever see anything other than the barrel part of it?

"A No, sir.

"Q You never saw whether it had a hammer, whether it was a revolver, an automatic or what it was?

"A No sir.

"Q Could it have been a pipe?

"A It could have been.

"Q Could it have been a cap gun, a toy gun?

"A Right.

"Q And it was black and shiny; is that right?

"A It wasn't too shiny, but it looked black.

"Q Did he ever tell you 'this is a gun' or anything like that?

"A No, sir.

"Q And he never fired it, I take it.

"A No, sir."

Rather than experiment in a course of possible fatal psychology, the clerk handed over the cash—a procedure encouraged by his employer. The defendant quitted the store and was followed, by car, by two witnesses who saw the entire transaction. They followed him until Shannon stopped at a service station, at which point the two witnesses called the police who, upon their arrival, arrested the defendant. The prosecution presented several other witnesses who, although cumulative, confirmed this evidence.

At the trial the defense declined to come forward with any testimony but rather decided to rest after the court denied its request for an instruction on the lesser offense of "theft from the person."

The record substantially supports the facts set forth by the defendant in his opening brief and they are not controverted or enlarged upon by the state.

The questions presented by the appellant are threefold:

1. What is the effect upon this case of State v. Shaw, 106 Ariz. 103, 471 P.2d 715, in which we held the bifurcated trial provisions of A.R.S. § 13–1621.01 to be a violation of due process?

2. Did the trial court err in refusing to instruct as to the lesser offense of "theft from the person?"

3. Did the trial court err in its instruction on the right and wrong test of the M'Naghten Rule?

▆ The instant case had been completed at the trial level but was still open on appeal at the time we handed down the decision in State v. Shaw, supra. The first question, as to the effect on this case, is answered by our decision in the Berger case, infra, where we thoroughly covered the question of retroactivity of the Shaw decision. Other than a bare statement that his rights were violated, Shannon fails to point out any particular facts wherein his trial was constitutionally tainted, nor was any objection made on this ground at the trial. We held that Shaw would be applied prospectively only to those cases commenced after the date of the decision. State ex rel. Berger v. Superior Court, 106 Ariz. 365, 476 P.2d 666; State v. Andrews, 106 Ariz. 372, 476 P.2d 673. Therefore the Shaw decision does not affect the judgment in this case.

The appellant next contends that the trial court erred in refusing to give an instruction on the lesser crime of theft from the person under § 13–661, subsec. A which provides that:

"A. Theft is:

"1. Feloniously stealing, taking, carrying, leading or driving away the personal property of another.

"2. Finding lost property under circumstances which give the finder knowledge of or means of inquiry as to the true owner, and appropriation of such

property to the finder's own use or to the use of another person not entitled thereto, without first making reasonable and just efforts to find the true owner and restore the property to him.

"3. Knowingly and designingly, by any false or fraudulent representation or pretense, defrauding any other person of money, labor or property, whether real or personal.

"4. Causing or procuring another to report falsely of his wealth or mercantile character and thus obtaining credit, and thereby fraudulently obtaining possession of money, property or the labor or service of another."

The crime charged and on which the court instructed the jury is covered by § 13–641, A.R.S.:

"13–641. Definition

"Robbery is the felonious taking of personal property in the possession of another from his person, or immediate presence, and against his will, accomplished by means of force or fear."

The distinction between the two crimes is obvious—the former is a surreptitious theft not necessarily even requiring the knowledge of the victim (i. e. pickpocket) while the latter requires the element that it be against the will of the victim and "accomplished by means of force or fear." Can the greater offense of robbery be committed without inclusion of the lesser offense of theft? That is the test this court set forth in State v. Westbrook, 79 Ariz. 116, 285 P.2d 161, 153 A.L.R.2d 619, to determine if the trial court must instruct on lesser, included offenses. It, of necessity, involves the factual pattern of the case.

In the instant case, it is clear that the facts do not permit the possibility of the commission of the lesser offense of theft from the person.

The testimony is clear that the victim, Robert Paul Iliff, a clerk at a U-Tote'm market, was ordered by the defendant to turn over the money. In fact, in his brief, this is conceded by the appellant wherein he states:

"* * * there was no dispute throughout the trial that defendant took money from Iliff. And the jury could have easily found that the state had failed to provide an element of the greater crime, robbery; they could have found that the state had failed to prove force or fear. There was no evidence whatever that force was involved. And the jury could easily have found that there was no fear. Iliff never said he was afraid and there was no reason to infer that he was. Iliff said he thought defendant had a gun, but he also admitted that it was never pointed at him. Defendant never suggested it was a gun. The court recognized that there was no substantial evidence that defendant carried a gun when it struck the deadly weapon allegation. It is easily explained that Iliff would hand over the money even though not afraid; it is common knowledge that nowadays store clerks are under instructions to turn over money on demand, a policy which is premised on the idea of avoiding needless deaths at the hands of real armed robbers."

This court rejects these novel arguments; that since no gun was openly displayed by the defendant that there was no force; that because the victim of a robbery did not say he was afraid, that there was no fear; and because employers instruct their help to turn over money, without resistance in order to preserve their lives, that such a laudable and sensible order to employees should redound to the benefit of the criminal, by making it appear that compliance with a demand to "hand over the money" becomes a voluntary, charitable contribution.

Patently the facts here militate against a surreptitious taking of personal property as described in § 13–661, subsec. A so that it was not error for the trial court to refuse the instruction on this offense.

Counsel's last contention is that the court erred in its instruction on insanity and cites the test set forth in the con-

curring opinion of State v. Malumphy, 105 Ariz. 200, 204, 461 P.2d 677. The court in the majority opinion in Malumphy pointed out that this court had consistently adhered to the M'Naghten Rule, citing with particular approval the decision in State v. Schantz, 98 Ariz. 200, 403 P.2d 521 which sets forth the rule as follows:

"This test of legal insanity has two elements. An accused must have had at the time of the commission of the criminal act:

"(1) Such a defect of reason as not to know the nature and quality of the act, or

"(2) If he did know, that he did not know he was doing what was wrong."

Counsel quotes from the concurring opinion of Malumphy, supra:

"It is my belief that even where a defendant is aware that a particular act is a violation of the law, if he harbors a delusory belief, which is the product of mental disease of such magnitude that he believes that the act is not morally wrong, and that as a result of such mental disease he is unable to understand that it is wrong for him to violate the law prohibiting the act, then he is not criminally responsible."

However, in the opinion it was pointed out that the evidence in Malumphy was not sufficient to justify such a finding and therefore concurred in the majority opinion.

 In the instant case three experts testified for the defendant: Dr. Breitner stated that it was his belief the defendant " * * * was not able to distinguish between right and wrong at the time of the act." Dr. Rubinow testified

"A. In my opinion I felt he did not know right from wrong.

"Q. Do you have an opinion, Doctor, as to whether or not he understood the nature and consequences of his act at that time?

"A. I would. Within reasonable medical certainty I would feel that he did not."

This testimony justified the M'Naghten Rule instruction as set forth in Schantz.

Dr. Gregory also testified

"I am sure he knew right from wrong and I am sure he knew the nature and consequences of his acts; however, I think he believed that he was justified in doing this wrong thing because the end justified the means in his mind because of his delusional thinking." (quoted from defendant's brief)

Dr. Gregory's testimony does not even go as far as the other two experts. The instruction was adequate, State v. Schantz, supra.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL, and EINO M. JACOBSON, Judge Court of Appeals, concur.

NOTE: Justice D. H. HAYS having disqualified himself, Judge JACOBSON was called to sit in his stead and participate in the determination of this matter.