478 P.2d 515

**STATE of Arizona, Appellee,**

v.

**Billy G. BURKHEART, Appellant.**

**No. 2065.**

Supreme Court of Arizona,
In Banc.

Dec. 31, 1970.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Stanfield, McCarville & Coxon, by Thomas A. McCarville, and Ron L. Briggs, Casa Grande, for appellant.

LOCKWOOD, Chief Justice:

Defendant was charged with murder. He pleaded not guilty and not guilty by reason of insanity, and was given a bifurcated trial under A.R.S. § 13–1621.01. A jury found him guilty of second degree murder and found that he was sane at the time of the crime. He was sentenced to not less than twenty-five and not more than thirty years in prison.

On appeal his attorney stated in his brief that he was unable to find any reversible error and that the brief was being filed in accordance with the rule of Anders v. California, 386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396. The issues raised in his brief were whether the verdict is supported by sufficient evidence and whether certain testimony was erroneously excluded.

After his brief was filed in the Court, we decided State v. Shaw, 106 Ariz. 103, 471 P.2d 715 in which we invalidated the bifurcated trial provided for in A.R.S. § 13–1621.01. Defendant then filed a supplemental brief requesting reversal on the grounds set out in Shaw, supra. Since Shaw, however, we held in State ex rel. Berger v. Superior Court, 106 Ariz. 365, 476 P.2d 666 (1970), that:

"Shaw is not retroactive and applies only to cases commenced after the date of the decision."

It is clear, therefore, that Shaw does not apply to the instant case in which the trial was held more than a year before the Shaw decision.

Defendant contends that the trial court erred in refusing to allow an optometrist to show to the jury, by means of a projector, just how blurred defendant's vision was at the time of the crime (because he had lost his glasses before the shooting). The projector was demonstrated before the judge in the absence of the jury, and threw upon a screen a picture, the light for which was first passed through a lens exactly the opposite from that in defendant's glasses. The judge ruled that the inability of the projector to show how the scene would have looked with both eyes at the same time, and the inability to adjust the lighting conditions in the courtroom to approximate those at the scene of the crime, would make the experiment confusing to the jury. He therefore refused to permit the use of the projector before the jury.

■ Defendant cites Moon v. State, 22 Ariz. 418, 198 P. 288 and State v. Polan, 78 Ariz. 253, 278 P.2d 432 for the proposition that in-court experiments are permissible. Both of those cases, however, hold (1) that the conditions under which such an experiment is performed must be somewhat comparable to those of the time and place of the crime, and (2) that the permitting of such experiments in court rests largely in the discretion of the trial judge whose ruling will not be disturbed except when such discretion is "manifestly abused." We cannot say the court abused its discretion here.

Nothing appears in the record as to how much defendant's vision was blurred, except that testimony showed that defendant's vision without glasses was 20/30. Although the judge ruled that the optometrist might testify to such facts, defense counsel chose not to use any such expert testimony.

Defense counsel argues that "he could not see who was in the line of fire and therefore could not have deliberately point-ed his gun or fired at Irl William Smith." The evidence indicated that defendant fired through a closed door, so we are at a loss to understand how evidence of poor vision would help his case. The crime could still be murder even though he were blindfolded.

Lastly, defendant argues that the evidence does not support the verdict. After a guilty verdict, on appeal this Court will view the evidence in a light most favorable to the state. State v. Davis, 104 Ariz. 142, 449 P.2d 607. The facts are as follows:

■ Defendant drinks considerably and has an uncontrollable temper. As a result he has been in many fights. On the night in question he was drinking and playing pool at the Birdcage Tavern in Casa Grande. He got into a fight with three men who beat and kicked him and broke his glasses. The fight was broken up by other patrons, and the female bartender ordered him out. He left. The men with whom he had been fighting, followed him outside were the fight was resumed. When it was learned by the combatants that the police were on the way the fight again broke up. Irl William Smith, one of the combatants re-entered the bar. Defendant followed him to the door and said that he would kill Smith. To the lady bartender, he said: "I'll get you too." Another patron tried to return his broken glasses and was rewarded for his efforts by defendant's biting the patron's fingers. Defendant told that patron that he "was going to get everyone one at a time."

Defendant then left the tavern, returned to his lodgings, and strapped on a belt and holster containing a .44 revolver. After about forty-five minutes he returned to the tavern, and kicked open the front door, and said to Smith: "Are you looking for me, you little son of a bitch?" Smith and another customer managed to push the door shut. Defendant then fired three shots through the door, one of which killed Smith. The door then opened, and defendant said "I got you, you little S.O.B." He

then ran away from the tavern and was not apprehended until the next morning.

The sole defense was that defendant did not remember much about what happened. He took the stand in his own defense in the insanity part of his trial only, at which time he admitted having been convicted of several felonies. He also admitted remembering "standing there shooting the gun through the door."

Affirmed.

STRUCKMEYER, V. C. J., and UDALL, McFARLAND and HAYS, JJ., concur.