Jose FLORES, Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 4685.

Supreme Court of Wyoming.

Dec. 14, 1977.

Keith M. Wilcox, Saratoga, for appellant.

V. Frank Mendicino, Atty. Gen.; Gerald A. Stack, Deputy Atty. Gen.; and Allen C. Johnson, Frank A. Chapman and Richard Honaker, Asst. Attys. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLIN-TOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

This is an appeal from a conviction of first degree murder in violation of Subsections (a) and (b)(i) of § 6–54, W.S.1957, 1975 Cum.Supp.

Defendant pleaded not guilty and not guilty by reason of mental illness or deficiency, and upon trial the jury found defendant guilty as charged and exacted the death penalty. Since the sentence was imposed, this court has held that the statute applying this penalty was unconstitutional, *Kennedy v. State,* Wyo., 559 P.2d 1014, and the State concedes in this appeal that this sentence cannot stand and would necessitate a remand for resentencing, which removes this contention from the area of discussion.

This trial was conducted in conformity with § 7–242.5(a), W.S.1957, 1975 Cum. Supp., and was bifurcated as therein provided with no objection by the defendant. However, after the trial and prior to argument of this case, we had decided the case of *Sanchez v. State,* Wyo., 567 P.2d 270; and based upon our holding therein appellant filed a supplemental brief, asserting this holding was applicable to the instant case and that appellant must be granted a new trial by virtue thereof. This raises for us the question of the retroactive application of *Sanchez* to pending cases, which question has not been determined by this court.

■ The problem of whether a decision holding a law unconstitutional should be applied retroactively or only prospectively has occasioned much discussion and filled many pages of the appellate reports. These express various views and apply various rules. We had earlier said that a state court of last resort may itself determine whether such decision should be applied prospectively or retroactively, *Ostwald v. State,* Wyo., 538 P.2d 1298, 1302, relying upon *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179; *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.

This oft-repeated rule does, however, have certain limitations. When the basis of the holding that a statute is unconstitutional involves the imposition of a wrongful burden of proof upon a defendant, such determination cannot be freely made. The North Carolina Supreme Court, in *State v. Hankerson,* 288 N.C. 632, 220 S.E.2d 575, refused to give the case of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, retroactive effect, which case held that a defendant was deprived of due process if an improper burden of proof was exacted by a statute. The North Carolina court placed some evident reliance upon the longstanding use of their rule and the devastating impact upon the administration of justice. The United States Supreme Court granted a writ of certiorari upon the single question of whether this holding should be applied retroactively. In its disposal of this appeal, in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (decided June 17, 1977), the Supreme Court reversed the North Carolina court and held that *Mullaney* should be retroactively applied. The Court said, at 97 S.Ct. 2345:

" * * * But we have never deviated from the rule stated in *Ivan V.* that ' "[where] the *major* purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that *substantially* impairs its truth-finding function and so raises *serious* questions about the accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect." ' * * * * "

■ Where the purpose served by the ruling would be to "substantially improve the accuracy of the factfinding process at trial" a retroactive application of such decision is mandated, *United States v. United States Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 1046, 28 L.Ed.2d 434, and particularly the concurring opinion of Justice Brennan, p. 1047; *V. v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659; *State v. Monroe,* Iowa, 236 N.W.2d 24, 38.

The Supreme Court of the United States, in its disposition of cases which involve the retroactive application of constitutional rules, has decided them on a case-to-case basis dependent upon the factual situation presented, and has recognized that a court may make such rulings prospective when exigencies of the situation require, *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199:

" * * * The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. '[T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved.' *Johnson, [v. New Jersey]* supra [384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882], at 728, 86 S.Ct. at 1778."

The first of these criteria is foremost, *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 1036, 22 L.Ed.2d 248; *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374, on remand 9 Cir., 523 F.2d 1382; and *Hankerson v. North Carolina,* supra, demonstrates that reliance cannot be made upon the last two of such criteria if the decision involves the prevention of the application of a wrongful presumption against the defendant, which violates certain basic requirements in respect to the burden of proof.

This court has never had the occasion to decide the question of the retroactive or prospective application of a constitutional decision insofar as it applies to cases tried prior to the decision but not finally determined by this court. Although quite extensive exploration of areas and rules generally applicable hereto was made in the case of *Ostwald v. State,* supra, that case involved a collateral attack upon a judgment and sentence and therefore has no direct application, but we should not ignore the expressions therein contained. In *Ostwald* we did recognize and approve the rule that a criminal defendant should receive "the benefit and effect of a change of law while a case is on direct review," 538 P.2d at 1303. We do not suggest that this is to be given universal application because it may well be dependent upon the basis of the constitutional finding as evidenced by the preceding authority. However, the views expressed in *Ostwald* are entirely consistent with our disposal of this case.

Our decision in this case must be based upon "the purpose to be served by the new standards," and whether it was directed at an aspect of the criminal trial which substantially impaired the truth-finding function, *United States v. Peltier,* supra, 95 S.Ct. at 2318; *Hankerson v. North Carolina,* supra; *United States v. United States Coin and Currency,* supra; *V. v. City of New York,* supra; and *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. *Sanchez* comes clearly within these guidelines in its holding that § 7–242.5(a) is unconstitutional because it inhibits the truth-finding function and thereby violates the defendant's right to the fair trial which due process of law requires. We there explained that the statutory procedure permitted the introduction of evidence by the prosecution, which coupled with the statutory presumption of mental responsibility resulted in a finding of guilty after the initial stage of the trial and before the defendant had any opportunity to present evidence of lack of mental responsibility. Specifically *Sanchez* notes that a defendant's sanity is "an integral part of a determination that he is guilty of the alleged offense"; and further, that it served "only to create an artificial procedural atmosphere, within which the criminal defendant has no idea of how to proceed in asserting his defense," 567 P.2d at 278. It is clearly evident, without discussion, that this decision was directed at "the im-

perative of judicial integrity,"[1] and to avoid a substantial impairment of the fact-finding function.

We cannot make a disposal of this case by casting upon the defendant the burden of objecting at the time of the trial because, as suggested in *Sanchez,* 567 P.2d at 280, we will not consider the fact that the defendant had not objected to the introduction of evidence during the first phase because of "the confusion inherent in this statutory procedure" and the lack of standards upon which to base either objections or rulings thereon.

We therefore hold that the decision in *Sanchez* must be applied retroactively to all cases not finally decided and in which the bifurcated procedure provided by this unconstitutional statute was employed, and that defendant's conviction must be set aside and the case remanded for a new trial.

We find no reason to address the remaining issues presented in this appeal inasmuch as they will probably not arise in a new trial.

Reversed and remanded.

RAPER, Justice.

I dissent.

The majority tells nothing about the nature of the case, gives no attention whatsoever to pertinent evidence and moves forward in a discussion of and decision on an inapplicable principle. I must urgently protest failure of the court to consider the rule of harmless error and the defendant granted the extravagance of a new trial.

The defendant was charged with first-degree murder of Orville Ventling, a security guard at the Wyoming State Penitentiary, in violation of § 6–54(a)(i), W.S.1957, 1975 Cum.Supp. The defendant was a prisoner at the penitentiary at the time of the killing. He was tried under the provisions of §§ 7–242.1 through 7–242.5, W.S.1957, 1975 Cum.Supp., amended by the Wyoming State Legislature in 1975.

The defendant prior to trial entered pleas of not guilty and not guilty by reason of mental illness or deficiency. He was sent to the Wyoming State Hospital for pretrial examination into his mental condition, pursuant to § 7–242.3. The detailed findings from the hospital disclosed that at the time of the alleged offense, defendant was not suffering from any mental illness or deficiency and:

" * * * did not lack substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. He is now capable of understanding the proceedings against him, his relationship to them, and to co-operate in his defense."

The defendant asked for and received a psychiatric examination by a psychiatrist of his own choosing. Dr. Bernice B. Elkin, M.D. at Casper, Wyoming. She testified at the trial, as I shall later relate.

The trial proceeded in the bifurcated fashion, as prescribed by § 7–242.5. Following evidence by the State, the trial judge, after preliminary instructions of a general nature pertaining to their duties, instructed the jury as follows:

"Since the Defendant has entered a plea of not guilty and also not guilty by reason of mental illness or deficiency, we have come to that point in the trial where you are to decide whether or not the Defendant did in fact commit the acts alleged in the Information, to-wit: Did the Defendant kill Orville Ventling in Carbon County, Wyoming, on or about the 4th day of March, 1975?

"The prosecution in this case, which is the State of Wyoming, is required to prove every material fact against the Defendant to the satisfaction of the jury beyond a reasonable doubt. If you have any reasonable doubt you shall find that the Defendant did not kill Orville Ventling.

"In reaching your decision you will not at this time give any consideration as to

1. This phrase appears in *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669.

whether there was premeditation, malice, felonious intent or whether Orville Ventling was a corrections employee acting in the line of duty. Likewise at this time you will not give any consideration as to whether or not the Defendant had any mental illness or deficiency at the time. "The sole question to be considered and determined by you is found in the Special Verdict which you will decide."

The jury returned the following special verdict:

"We the jury, duly empaneled and sworn to try the above-entitled case, do find that the Defendant, Jose Flores, did kill Orville Ventling in Carbon County, Wyoming, on or about the 4th day of March, 1975."

The defendant did not testify, either in the first phase nor in the second phase that ensued following the special verdict. The State did not present any evidence of the mental responsibility of the defendant, either in its case presented in the first phase nor in the form of rebuttal in the second phase. The defendant's brief admits and the record shows that the only evidence with respect to the mental responsibility of the defendant was the testimony of Dr. Elkin, the psychiatrist appointed to examine the defendant at his behest. The defendant was not deprived of any right to present evidence at any stage.

The county attorney apparently took the position, and correctly so, that the testimony of Dr. Elkin failed to show that the defendant, " * * * at the time of the criminal conduct as a result of mental illness or deficiency, lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." It was further apparently his view that the State was entitled to the benefit of the provisions of § 7–242.5(b), providing as follows:

"The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged and the mental responsibility of the defendant. However, every defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant."

I agree under the facts of this case.

The evidence of the defendant clearly and decisively shows that if he was not enjoying his usually normal mental capability, it was because of his voluntary ingestion and inhaling of drugs. The defendant's psychiatrist testified that defendant had told her that he had on the day of the alleged offense been drinking three or four bottles of Aqua Velva after-shave lotion, Vitalis hair tonic and Old Spice underarm deodorant, purchased at the penitentiary canteen, in addition to on the same day sniffing glue from the penitentiary leather shop. She called these substances "unprescribed" drugs.

The defendant's psychiatrist also testified defendant told her that he had nightmares about his mother-in-law who had died 10 years previously, and also saw dogs, cats, snakes and spiders when he was sleeping. He also described seeing people who were not there or feeling as if houses and mountains were moving, the morning after he stopped alcohol intake in the past. Additionally, he claimed he saw "little green men walking around the floor. I stare at them and they don't talk to me." She described these so-called manifestations as "atypical"—in other words, not a part of medical experience in the way described by the defendant.

The conclusions of the defendant's psychiatrist were:

"A At the time of the examination I concluded that Mr. Flores is mildly mentally retarded; that he showed no evidence of organic or functional brain disorder at the time of psychiatric examination on October 20th through 23rd, 1975; that he had a loss of memory for the events of March 4, 1975, which was consistent with acute brain syndrome or acute toxic encephalopathy."

While the defendant told the psychiatrist that he had engaged in the ingestion of similar concoctions and glue-sniffing in the past, she could find no evidence of "perma-

nent organic brain damage either in the physical examination or the mental status examination or the psychological testing." She further testified that, "Mr. Flores had no mental illness at the time of this psychiatric examination." Nor did she find any evidence of any thought disorder which may have existed on the date of the murder. The sum and substance of her testimony was that if what the defendant told her was true, he was no more than drunk from the mixtures he had consumed on the date he killed the prison guard. She found no evidence whatsoever of either functional or organic mental illness.

At the close of all the evidence, the trial judge again instructed the jury, repeating some of those of a general nature, he had given in the first phase as to their duties, the presumption of innocence, the burden of proof on the State, defining circumstantial evidence and direct evidence, definitions, statutes relating to first-degree murder, second-degree murder, manslaughter, the essential elements of those crimes, definitions of mental illness and deficiency taken from the statutes of the State relating to those matters, an instruction to find the defendant not guilty if suffering from mental illness or deficiency and did not possess "substantial capacity to understand the wrongfulness of his conduct" and "know the nature and probable consequences of his act," along with others.

> The jury was also instructed that:
>
> "You are instructed that drunkenness or the ingestion or inhalation of toxic substances is not a defense or an excuse for any crime. A man who voluntarily puts himself in a condition to have no control of his actions is held to be accountable for his acts as if he had been possessed of sound reason and discretion.
>
> "However, our laws provide that when the crime rests in intention, the inebriated condition of the person at the time of the commission of the crime may be proven as bearing upon the question of intention. Murder in the first degree in two forms, (murder in the first degree of a corrections employee and murder in the

first degree without those special circumstances) is charged in the Information and the included offenses of murder in the second degree and voluntary manslaughter are crimes which you may consider, as instructed and each includes the necessary element of intent. The elements of intent and premeditation are also present in the requirement of first degree murder with or without the special circumstances mentioned.

> "If the jury believes from all the evidence that a defendant committed a crime at a time when he was so intoxicated from alcohol or the ingestion or inhalation of toxic substances as to render him incapable of forming an intent in those crimes calling for intent or premeditation, you would have to find a defendant not guilty of any offense where intent is a material element. Intoxication is only one of the circumstances to be considered in determining whether intent or premeditation was present or absent.
>
> "The defense or excuse of drunkenness or intoxication is not available to a person who forms an intent to commit a crime before becoming intoxicated. If the jury believes that a defendant premeditated or formed intent as required for a particular offense prior to becoming intoxicated, and if you find a defendant was without mental illness or mental deficiency then you must disregard the defense or excuse of intoxication."

The jury found the defendant guilty of first-degree murder.

This case was therefore no more than a case where there was obviously a phony plea of mental illness or deficiency and a fabricated story of voluntary drinking and inhaling drugs, which the jury did not believe, a story that did not come to them directly from the lips of the defendant and of which there was no evidence except what the defendant told his psychiatrist.

Now, I must connect what I have outlined to the error of the majority in jumping into the question of retroactivity of our recent decision of *Sanchez v. State,* 1977, 567 P.2d 270, holding § 7–242.5(a) unconstitutional, except the last sentence thereof.

I joined with the majority in *Sanchez.* We there held invalid the bifurcated procedure of first, a hearing of evidence and receiving a preliminary verdict by the jury "on whether the defendant in fact committed the acts charged in the alleged criminal offense," followed by a further phase that if the jury find the "defendant did in fact commit such acts, then evidence would be heard on the remaining elements of the alleged criminal issue of the mental responsibility of the defendant."

The opinion of the court in *Sanchez,* as I did then and now understand it, decided that the procedure just outlined did not pass constitutional muster because: First, men must guess at its meaning and differ as to its application. The trial court in *Sanchez* guessed wrong in breaking down the offense as to the part to be first heard and illustrated the vagueness of the act in that regard. With the multitude of crimes, each with different elements, with 15 trial judges, there would be a continual guessing game, to divide a crime charged into "acts," and "remaining elements." *Sanchez* was an excellent case to demonstrate the vagueness of the offensive provision because of the difficulty a most competent trial judge had with the particular offenses before him.

Next, the court, as I further understand our opinion in *Sanchez,* said that the proving of the acts in the first phase would also prove the "remaining elements" to be tried in the second phase and when the first phase was completed, an "irrebuttable presumption" of guilt had arisen in violation of due process and thus a fair trial on the issue of insanity denied.

In arriving at those conclusions, we strongly relied upon *State v. Shaw,* 1970, 106 Ariz. 103, 471 P.2d 715, cert. den. 400 U.S. 1009, 91 S.Ct. 569, 27 L.Ed.2d 622, holding identically, even saying that § 7–242.5(a), in its intolerable part, "has adopted the Arizona approach." While the majority in *Sanchez,* with the exception of Justice Thomas, was willing to rely upon Arizona jurisprudence in declaring the act unconstitutional, it now parts company with Arizona in that court's practical approach to

and disposition of other cases tried under its unconstitutional procedure. Since *Shaw,* supra, was decided, the Arizona supreme court has seen fit to affirm convictions had under its bifurcated procedure, and with good reasons. *State v. Howes,* 1973, 109 Ariz. 255, 508 P.2d 331; *State v. Shannon,* 1970, 106 Ariz. 447, 478 P.2d 71; *State v. Andrews,* 1970, 106 Ariz. 372, 476 P.2d 673; *State v. Burkheart,* 1970, 106 Ariz. 490, 478 P.2d 515; *State v. Mitchell,* 1970, 106 Ariz. 492, 478 P.2d 517; *State ex rel. Berger v. Superior Court in and for County of Maricopa,* 1970, 106 Ariz. 365, 476 P.2d 666.

Two of those cases surfaced in federal court, *Mitchell v. Eyman,* 9 Cir. 1972, 468 F.2d 856, and *Burkheart v. Eyman,* 9 Cir. 1972, 462 F.2d 1335, cert. den. 409 U.S. 1127, 93 S.Ct. 945, 35 L.Ed.2d 259, where the federal establishment showed very little concern about any constitutional implications and in the absence of prejudice denied relief.

The Arizona and federal courts adopted the reasonable points of view that in each of the cases following *Shaw,* there was no prejudice to the defendant by use of the bifurcated procedure. The majority here moves straight ahead in an arbitrary, unyielding, hard-nosed manner, looking neither to the right or left or to the rear with the narrow and unnecessary point of view that since we declared this statutory section unconstitutional, ergo, every case tried under it must be reversed. The Arizona courts have taken a considered approach, viewing each case to determine whether it operated as against each individual defendant concerned, in an unconstitutional way and with prejudice.

Take, for example, *State v. Howes,* supra; the defendant had been found guilty of first-degree murder under the Arizona bifurcation procedure. On appeal, he claimed the benefits of *State v. Shaw,* supra. The court held that Howes alleged no facts that would indicate he was prejudiced and cited *Burkheart v. Eyman,* supra. The court there pointed out that the defendant had not taken the stand in the sanity phase of the trial. The defendant's father and a

psychiatrist testified he was insane but state psychiatrists testified he was sane. The Arizona court could see no prejudice and affirmed.

Take, for a further example, *State v. Burkheart,* supra (relief denied in *Burkheart v. Eyman,* supra), in which at the sanity phase of the trial, the defendant took the stand but produced no other evidence and the State presented evidence of his sanity. The sole defense of the defendant was that he did not remember much about what happened. The federal decision as to *Burkheart* held that he failed to show prejudice.

From those cases, we come up with two conclusions. First, the defendant must show how he was prejudiced and, second, the defendant's evidence must show he was mentally ill or deficient. The defendant in this appeal was afforded an opportunity to show the effect of *Sanchez v. State,* supra, upon the defendant's conviction. He made no showing that in this case the procedure operated in a prejudicial manner.

The defendant here produced no evidence to be considered by a jury that "as a result of mental illness or deficiency he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." Section 7–242.4(a). Since he produced no such evidence, there is no possible way that the jury's initial finding that he killed his victim could carry any "irrebuttable presumption" to the disadvantage of the defendant when he fails to produce evidence of his mental incapacity. There is nothing against which such a presumption could operate. The fact or truth finding process was in no way inhibited.

Under the guise of presenting a defense of insanity, the defendant has attempted to utilize the services of a psychiatrist, as an improper vehicle to carry his unsworn assertions with respect to drunkenness to the jury. Such a practice is improper. Section 7–242.4(e) provides especially:

"No statement made by the defendant in the course of any examination or treatment pursuant to this section and no information received by any person in the course thereof is admissible in evidence in any criminal proceeding on any issue other than that of the mental condition of the defendant."

There is no need to elevate to unconstitutional proportions the handling of this case. The principles I espouse in this dissent are not new to this court. I view the majority opinion as applying the principle of plain error or something akin thereto. In *Hays v. State,* Wyo.1974, 522 P.2d 1004, this court said that principle should only be applied where error would seriously affect the fairness, integrity or public reputation of judicial proceedings and not even all errors of constitutional dimension justify reversal under that doctrine. A defendant who claims prejudicial error has the burden of establishing prejudice. *Cosco v. State,* Wyo.1972, 503 P.2d 1403, cert. den. 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693; *Belondon v. City of Casper,* Wyo.1969, 456 P.2d 238, cert. den. 398 U.S. 927, 90 S.Ct. 1815, 26 L.Ed.2d 89. Only prejudicial error warrants a reversal. *State v. Spears,* 1956, 76 Wyo. 82, 300 P.2d 551. For an error to be regarded as harmful, there must be a reasonable possibility that in absence of error, verdict might have been more favorable to the defendant. *Reeder v. State,* Wyo.1973, 515 P.2d 969. From all that authority, I conclude that prejudice is not assumed, even on constitutional questions. In the absence of any showing that the defendant suffered any prejudice, we need not reach the question of retroactivity in this case.

I am not convinced that any constitutional question presents itself because there is no evidence that the defendant was mentally ill or deficient. Even if there was a constitutional question, the totality of the evidence shows that the defendant was not prejudiced beyond a reasonable doubt. As I understand the rule, if there is error of constitutional proportions, it can only be held harmless if the appellate court is able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. State of California,* 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065, reh. den. 386 U.S. 987, 87 S.Ct. 1283,

18 L.Ed.2d 241. A good discussion of that rule appears in *United States v. Valle-Valdez,* 9 Cir. 1977, 554 F.2d 911, 914–916, where the court observed the measure of that rule to be that *Chapman* does not require an appellate court to reverse unless there is a reasonable possibility that the error materially affected the verdict. That is the same standard articulated by this court in *Reeder v. State,* supra. See note 6 to *Valle-Valdez* for some types of cases requiring automatic reversal. None of a procedural nature, such as here, are shown. Even if we consider there is error of constitutional magnitude, I have no trouble concluding that it is harmless within the yardstick of *Chapman* and *Valle-Valdez.*

If it was necessary, I would join with the Arizona supreme court and hold it not retroactive for all the reasons stated in *State ex rel. Berger v. Superior Court in and for County of Maricopa,* supra, but will save any discussion in that regard until such time as a proper case presents itself to this court.

I would have affirmed in all respects. A defendant is entitled to a fair trial but not a perfect one. *Lutwak v. United States,* 1953, 344 U.S. 604, 619–620, 73 S.Ct. 481, 490, 97 L.Ed. 593, 605, reh. den. 345 U.S. 919, 73 S.Ct. 726, 97 L.Ed. 1352. Justice should not be so readily and easily frustrated.